**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bryan Allen HARTSFIELD,**
**Defendant–Appellant.**

**No. 91–2196.**

United States Court of Appeals,
Tenth Circuit.

Oct. 7, 1992.

James Rawley, Albuquerque, N.M., for defendant-appellant.

James D. Tierney, Asst. U.S. Atty., D.N.M., Albuquerque, N.M. (Don J. Svet, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before McKAY, Chief Judge, BRORBY, Circuit Judge, and VAN SICKLE, District Judge.[1]

McKAY, Chief Judge.

Norman Truitt, a long-time friend of defendant, arrived in Albuquerque, New Mexico, on February 4, 1991, from Lubbock, Texas. After contacting defendant, Mr. Truitt and defendant went to a storage facility where Mr. Truitt rented a storage locker in which cocaine and cocaine base were placed later that day. Law enforcement officers obtained permission to bring a dog onto the premises and the dog "alerted" to the presence of controlled substances at the locker rented by Mr. Truitt and defendant. Later that day the officers obtained a search warrant, searched the storage unit, and found cocaine and cocaine base there. The storage unit was placed under surveillance, and when Mr. Truitt and defendant returned to the storage unit on February 5, 1991, they were arrested.

Following a trial by jury, defendant was convicted of three offenses: (1) conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841 and 846 (1988) and 18 U.S.C. § 2 (1988); (2) possession with intent to distribute more than 500 grams of cocaine base in violation of 21 U.S.C. § 841 (1988) and 18 U.S.C. § 2 (1988); and (3) possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841 (1988) and 18 U.S.C. § 2 (1988). Defendant appeals for relief from these convictions.

Defendant makes various claims as to the propriety of his trial. Defendant first argues that the trial court erroneously admitted highly prejudicial evidence. This

---

1. Honorable Bruce M. Van Sickle, Senior District Judge, United States District Court for the District of North Dakota, sitting by designation.

evidence consisted of testimony concerning defendant's association with a gang known to participate in various drug-related activities and testimony concerning prior drug transactions in which defendant participated. This court reviews the trial court's admission of evidence for an abuse of discretion. *United States v. Esparsen,* 930 F.2d 1461, 1475–76 (10th Cir.1991). This court likewise reviews admission of evidence concerning a defendant's prior crimes, wrongs, or acts for an abuse of discretion. *United States v. Harrison,* 942 F.2d 751, 759 (10th Cir.1991).

Prior to trial, defendant filed a motion in limine seeking to exclude any reference to defendant's gang membership or any mention of defendant's participation in prior cocaine sales. The government opposed the motion, arguing that evidence to be presented at trial would establish that defendant was a member of a street gang whose primary purpose was to distribute crack cocaine. Therefore, proof of such an association was relevant to the specific intent element of conspiracy to distribute cocaine as charged in the indictment. The government also asserted that evidence of prior narcotics transactions was admissible to show a common plan, motive, or intent to distribute cocaine. The trial court denied the motion.

On appeal, defendant categorizes the evidence he sought to exclude into two categories: (1) gang association, and (2) prior drug dealings observed by law enforcement officials in which defendant and the alleged co-conspirator in this case, Mr. Truitt, were involved. Defendant contends that the trial court's decision to admit this evidence constitutes reversible error.

Mr. Truitt testified at trial that he and defendant were both members of the "Black Mafia Crip Dawgs." R. vol. V at 313–14. Police detective Smyth testified as an expert witness in gang investigations that the "Black Mafia Crip Dawgs" is a non-traditional gang whose main purpose is to distribute cocaine and crack cocaine. R. vol. V at 498–501. Detective Smyth also testified that defendant admitted his association with that gang. R. vol. V at 523.

The government also introduced into evidence an envelope bearing the "Black Mafia Crip Dawgs" insignia which was found in the white Mustang defendant used to transport the cocaine and cocaine base to the locker facility at which defendant was later arrested.

Defendant contends that admitting evidence of gang membership where not necessary to show motive to commit the crime or bias of a defense witness constitutes reversible error because such evidence is highly prejudicial and outweighs any probative value the evidence may have. Appellant's Brief at 29 (citing *United States v. Rodriguez,* 925 F.2d 1049, 1053 (7th Cir. 1990); John E. Theuman, Annotation, *Admissibility of Evidence of Accused's Membership in Gang,* 39 A.L.R.4th 775 (1985)). *See also* Fed.R.Evid. 403. Defendant asserts that the evidence of gang membership presented at trial had little probative value because the government failed to show any link between defendant's gang membership and bias of a defense witness or between defendant's gang membership and a motive to commit the crime.

■ The balancing of competing interests required by Rule 403 is a task to which the trial judge is particularly suited, *United States v. Keys,* 899 F.2d 983, 987 (10th Cir.1990), and "we will not disturb the trial judge's ruling absent a clear abuse of discretion." *Id.*

■ The two primary purposes for the government's use of evidence concerning defendant's membership in the "Black Mafia Crip Dawgs" were (1) to establish a connection between defendant and the white Mustang used to transport the cocaine and crack cocaine, and (2) to show the basis of Mr. Truitt's and defendant's relationship and the existence of the conspiracy. Because the record demonstrates the probative value of the defendant's gang association under the facts of this case, we hold that the trial court did not abuse its discretion in admitting evidence of defendant's gang membership.

■ Defendant also complains of evidence admitted by the trial court concern-

ing prior investigations of defendant which did not result in criminal charges. Specifically, defendant points to the testimony of three law enforcement officers that had observed defendant and Mr. Truitt together when cocaine was sold.[2] He asserts that such evidence constitutes character evidence inadmissible at trial under Fed. R.Evid. 404(b). However, because this evidence was probative of the existence of the actual conspiracy alleged in the instant case, Rule 404(b) is inapplicable because the testimony was not offered to prove "other crimes." *See* Fed.R.Evid. 404(b); *United States v. Gomez,* 810 F.2d 947, 958 (10th Cir.1987). Therefore, the trial court did not abuse its discretion in admitting this evidence.

■ On a related matter, defendant contends that the district court erred in denying defendant's motion for mistrial when law enforcement officers testified that they had seen defendant and Mr. Truitt together on prior occasions when cocaine was sold. This court reviews the trial court's denial of a motion for a mistrial under an abuse of discretion standard. *United States v. Westbo,* 576 F.2d 285, 292 (10th Cir.1978). Again, because this evidence tended to establish the existence of the conspiracy charged in this case, we hold that the trial court did not abuse its discretion in denying the motion for mistrial. *See United States v. Gomez,* 810 F.2d at 958.

Defendant next argues that insufficient evidence existed to support his conviction of conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841 and 846 (1988) and 18 U.S.C. § 2 (1988). When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, "the appellate court must examine the evidence in the light most favorable to the government and then decide if there was sufficient proof, direct or circumstantial, to justify a finding of guilt beyond a reasonable doubt." *United States v. Metropoli-*

*tan Enterprises, Inc.,* 728 F.2d 444, 450 (10th Cir.1984).

In *United States v. Bowie,* 892 F.2d 1494 (10th Cir.1990), this court outlined the elements for the crime of conspiracy with which defendant is charged: "To obtain a conviction ... the government must establish by direct or circumstantial evidence that (1) a conspiracy existed, (2) the defendant knew at least the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily participated in the conspiracy." *Id.* at 1497. Defendant's position on this issue appears to be that while defendant may have satisfied these elements, the alleged co-conspirator, Mr. Truitt, did not. Therefore, there can be no conspiracy.

Defendant argues that Mr. Truitt testified that he did not know cocaine was inside the cooler, and while he had previously done cocaine deals with defendant, Mr. Truitt did not come to Albuquerque for that purpose on February 4, 1991. Defendant also alleges that Mr. Truitt testified that he went to the storage locker containing the cocaine simply because defendant asked him to and not to further a drug distribution agreement. *See* R. vol. V at 363–64.

■ Thus, we must decide whether Mr. Truitt qualifies as a member of a conspiracy to distribute cocaine. We note here that Mr. Truitt's connection to the conspiracy "need only be slight" if there is sufficient evidence to establish the existence of the connection beyond a reasonable doubt. *See United States v. Bowie,* 892 F.2d at 1497 (quoting *United States v. Batimana,* 623 F.2d 1366, 1368 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980)). We hold that Mr. Truitt's testimony at trial was sufficient to establish the connection between Mr. Truitt and the conspiracy. Mr. Truitt testified that he had assisted defendant in prior drug sales. On those occasions Mr. Truitt's responsibility

2. Defendant also appeals the admission of testimony by a police officer that defendant used a pager to facilitate the cocaine and crack cocaine sales. The admission of the use of pagers by a person who distributes narcotics is admissible as evidence of use of a "tool of the trade." *United States v. Martinez,* 938 F.2d 1078, 1085 (10th Cir.1991). We thus cannot hold that the admission of this evidence constitutes an abuse of discretion.

was to act as a "muscle-man;" or, in his words, to "be there in case anything happened." R. vol. V at 338. In this case, Mr. Truitt went along with defendant to store a container which Mr. Truitt believed contained drugs. R. vol. V at 329. He rented a storage locker in his name and devised a plan to disguise the cooler by hiding it behind his suitcase. R. vol. V at 355.

■ Although this evidence does not establish the existence of an express agreement to distribute cocaine, such an express agreement is not required. A tacit agreement is sufficient. *United States v. Esparsen*, 930 F.2d 1461, 1472 (10th Cir.1991). This is the type of agreement which the evidence shows existed here. Mr. Truitt testified that when defendant wanted Mr. Truitt to participate in a cocaine transaction, defendant would typically ask Mr. Truitt to accompany him without expressly informing him that they were to participate in a cocaine transaction. R. vol. V at 364. Even so, Mr. Truitt knew that on prior occasions, as well as on the occasion giving rise to the charge against defendant, they were to participate in a drug-related transaction. *Id.* This is sufficient evidence to support the jury's conclusion that an agreement to distribute cocaine existed.

The evidence is also sufficient when viewed in the light most favorable to the government that Mr. Truitt knew the essential goal of the agreement—to store cocaine in a safe location prior to its distribution—and that he knowingly and voluntarily participated in the conspiracy by accompanying defendant to the locker and by renting the locker in his name. R. vol. V at 321–22. Thus, we hold that sufficient evidence was presented at trial to support the conclusion that Mr. Truitt qualified as a member of the conspiracy.

We therefore reject defendant's argument that insufficient evidence existed to convict him of conspiring to distribute cocaine in violation of federal law and hold that there was sufficient proof, both direct and circumstantial, to justify the jury's finding of guilt beyond a reasonable doubt.

■ Defendant next asserts that the trial court's refusal to declare a mistrial based on prosecutorial misconduct during the government's closing argument constitutes reversible error. We review the denial of a motion for a new trial based on prosecutorial misconduct for abuse of discretion. *United States v. Haar*, 931 F.2d 1368, 1374 (10th Cir.1991).

During its closing argument, the government made the following statement about Sylvia and Al Grice, who operated the storage facility where the cocaine was found:

> The defense is going to get up here and argue ... [defendant's] name is nowhere in this search warrant, no place. That's true.
>
> But how could his name have been in that search warrant? Sylvia Grice knew this person she identified in the courtroom accompanied [Mr.] Truitt. She knew this person paid [to rent the locker], but she didn't know his name.... Al Grice testified in person, the defendant was the one who asked him where [the locker] was, but they didn't know his name [at that time].

R. vol. VI at 577. Defense counsel moved for mistrial, arguing that this statement implied that the Grices were confidential informants whose identity had not been disclosed to defense counsel. *Id.* Defense counsel also argued that the statement constituted a personal opinion on the credibility of witnesses' testimony and did not relate directly to the evidence. R. vol. VI at 616. The trial court denied the motion, holding that the statement was a fair comment on the evidence. R. vol. VI at 578, 616.

■ It is true that the prosecution may not vouch for the credibility of its witnesses. *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir.1990). However, a statement by the prosecution "is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Id.* Such is not the case here.

Based on our review of the record, we conclude that the trial court correctly held that the prosecutor's statement in this case was a fair comment on the evidence and not an impermissible assertion of the Grices' credibility.

█ Defendant's next argument is that defendant was denied a fair trial by an impartial jury as a result of the multi-trial jury selection method employed by the trial court. This court reviews a trial court's decisions relating to errors and prejudice in jury selection for a criminal trial under an abuse of discretion standard. *United States v. Washita Const. Co.*, 789 F.2d 809, 819 (10th Cir.1986).

On May 6, 1991, a jury was selected to hear this case through a multi-trial jury selection process. At the beginning of this process, defendant moved for independent jury selection. R. vol. IV at 107–08. Defendant based his motion on the likelihood that mass jury selection would confuse the jury and allow prejudicial information from other cases to compromise defendant's right to a fair trial. *Id.* at 108. The trial court denied defendant's motion. At the close of jury selection, defendant again argued that the mass voir dire used in the jury selection process in this case resulted in the jury panel being prejudicially tainted. R. vol. IV at 205–06. This argument was also unavailing. R. vol. IV at 206.

█ We have previously held that mass jury selection is not per se violative of a defendant's right to a fair trial. *See United States v. Franklin*, 700 F.2d 1241, 1242 (10th Cir.1983). Such a jury selection method conserves judicial resources and promotes efficient disposition of cases. *Id.* Mass jury selection does, however, present the possibility of bias either through exposing potential jurors to prejudicial information during the voir dire or through a jury member's interim service on a panel preceding the panel sitting to hear defendant's case. A defendant who timely objects to interim service by a member of his or her jury has the right to require the trial court to allow a supplemental voir dire to determine whether the jury should be quashed. *Id.* Defendant did not so object in the case currently before us, nor does defendant appeal this aspect of mass jury selection.

█ Rather, defendant asserts that questions from other attorneys and responses from prospective jurors tainted the rest of the potential jurors. Specifically, defendant points to remarks on the following subjects as prejudicial: defense counsel in another case elicited comments from the mass jury panel regarding opposition to alcohol for religious reasons, health reasons, and societal reasons, R. vol. IV at 177; and another attorney stated during her voir dire of potential jurors that "cocaine is a prevalent problem in the United States," R. vol. IV at 146.

We hold that the trial court did not abuse its discretion in utilizing mass jury selection or in denying defendant's motion for independent jury selection. The statements defendant cites are not so prejudicial that their mere utterance rendered the potential jurors biased against defendant. Moreover, defendant possessed significant rights to ensure that an unbiased jury was seated to hear his case. Defendant had the right to pose an unlimited range of questions to any potential juror during the jury selection process. In addition, defendant had the right to exercise his peremptory challenges against any juror he believed was prejudiced by the mass jury selection.

We also note that defendant has made no showing that any of the jurors which heard his case were in any way biased as a result of the jury selection procedure utilized by the trial court, nor did he show that any other prejudice against him arose from the mass jury selection. Finally, we note that prior to trial the court, sua sponte, inquired whether the jurors' answers would remain the same if the jurors were asked the same questions on voir dire by the court or counsel that they had been asked during jury selection. No juror responded and the jury was then sworn. R. vol. V at 291.

█ Defendant also argues that he was denied a fair trial and equal protection of the law as a result of the government striking potential jurors having Hispanic surnames. This court reviews a challenge

to the improper striking of prospective jurors based on their race de novo, giving deference to the trial court's first-hand observation of the circumstances of each case. *United States v. Esparsen*, 930 F.2d 1461, 1465 (10th Cir.1991).

■ It is clear that defendant has the constitutional right "to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers v. Ohio*, — U.S. —, —, 111 S.Ct. 1364, 1367, 113 L.Ed.2d 411 (1991). The government's "privilege to strike individual jurors through peremptory challenges ... is subject to the commands of the Equal Protection Clause." *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). Thus, any purposeful racially motivated discrimination during the jury selection process "violates defendant's right to equal protection because it [would] deny him the protection that trial by jury is intended to secure." *Id.* at 86, 106 S.Ct. at 1717. In order to successfully challenge the government's exclusion of Hispanic jurors as impermissible racially discriminatory action,

> (1) the defendant must show that he is a member of a cognizable racial group, and that the prosecution has exercised peremptory challenges to remove members of a particular race from the venire; (2) the defendant is entitled to rely on the fact that peremptory challenges are a jury selection practice which permits discrimination by those who wish to discriminate; and (3) the defendant must show that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire members from the petit jury on account of their race.

*Esparsen*, 930 F.2d at 1465 (citing *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986)). Here, defendant is a member of a cognizable racial group and the prosecution exercised three of its peremptory challenges to exclude Hispanic members of the venire from the petit jury seated to hear defendant's case. Thus, if defendant can successfully show that the facts and circumstances

raise an inference that the prosecutor exercised peremptory challenges to exclude potential jurors on account of their race, then defendant will have established a prima facie case of purposeful discrimination and the government will be required to present a neutral explanation for challenging the Hispanic jurors.

We conclude that defendant has failed to establish a prima facie case of purposeful discrimination. Among the circumstances indicating that the government's peremptory challenges to three Hispanic surnames were not purposefully discriminatory are the following facts: (1) the jury ultimately selected contained five jurors having Hispanic last names and two alternates having Hispanic first or last names, R. vol. IV at 203; and (2) although not required to do so, the government presented a neutral explanation for each exercise of a peremptory challenge against a venire member with a Hispanic last name, each of which was upheld by the trial court, R. vol. IV at 201–05, R. vol. VI at 541. Considering these circumstances, we hold that defendant has failed to establish a prima facie case of purposeful discrimination in the selection of the petit jury and therefore affirm the trial court's ruling in this regard.

Finally, defendant argues that the errors committed by the trial court merits our reversal because the cumulative nature of those errors denied defendant his right to a fair trial. An independent analysis focusing on the cumulative effect of errors alleged by defendant does not persuade us that these non-errors collectively result in error.

We AFFIRM defendant's convictions on all counts.