PAUL KELLY, Jr., Circuit Judge.

Background

In August 1990, officers executed a search warrant at an Albuquerque apartment. Officers found 700 grams of crack cocaine, some packaged and some drying on paper towels. In addition, scales, bak *1558 ing soda, a razor blade and a pan with crack residue were found in the kitchen. Various pictures, one depicting Mr. Jackson, also were found. Two guns were confiscated; one was in the living room under a couch and the other was in a bedroom in a sealed bag. Finally, the apartment contained various blue objects including a bucket, dish rack, bandanna, comforter, some clothing items and gravel in an aquarium.
The four persons in the apartment were identified as DeShawn Robinson, Jeffrey Meekes, Keith Jackson and Terry Wimberly.[1] Mr. Robinson was in the living room, Mr. Meekes and Mr. Jackson were apprehended in the kitchen and Mr. Wimberly was found in the utility room. Mr. Meekes had a New Mexico identification card and wore a pager. Mr. Jackson also had a New Mexico identification card and a California driver’s license. Several traffic citations issued to Mr. Jackson were found elsewhere in the apartment, along with receipts issued to Mr. Jackson and Mr. Meekes for furniture, rent and utility payments and other services.
All four were charged with conspiracy to possess with intent to distribute more than fifty grams of cocaine base, 21 U.S.C. § 846, possession with intent to distribute more than fifty grams of cocaine base, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), manufacture of more than fifty grams of cocaine base, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and the use or carrying of a firearm to facilitate a drug conspiracy, 18 U.S.C. § 924(c). After a jury trial, Meekes, Robinson and Jackson were found guilty of all but the firearm charge. They now appeal. Defendant Wimberly was acquitted. Our jurisdiction arises under 28 U.S.C. § 1291.
All defendants challenge the admission of certain “gang affiliation” evidence, which was introduced through expert testimony. All defendants contend that insufficient findings support a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1. All defendants challenge the sufficiency of the evidence to convict. Mr. Robinson contends that the failure of the trial court to give a limiting instruction concerning prior arrests was error and all defendants challenge the admission of prior arrest and conviction evidence. Mr. Meekes and Mr. Jackson both contend their sentence enhancements under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm were incorrect and the government cross-appeals, suggesting that the firearm enhancement should have been applied to Mr. Robinson as well. Mr. Jackson and Mr. Meekes argue that the Sentencing Guidelines violate the equal protection and due process guarantees of the Constitution. Mr. Jackson contends that the government made prejudicial closing remarks and that erroneous instructions were given to the jury. Finally, Mr. Meekes seeks specific performance of an agreement allegedly entered into with the government before trial.
Although we find that the prior arrests' of both Mr. Jackson and Mr. Meekes were improperly introduced, we conclude that, under the circumstances, such error was harmless and affirm their convictions along with the conviction of Mr. Robinson. Because it is not clear that the Guidelines were correctly applied with respect to the obstruction of justice enhancement, we remand to the district court for reconsideration as to the applicability of this particular enhancement.
I. Prior Arrest Evidence
Evidence of other crimes, wrongs or acts is admissible only for limited purposes and only when various prerequisites are satisfied. Fed.R.Evid. 404(b); United States v. Kendall, 766 F.2d 1426, 1486 (10th Cir.1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). Because evidence of “other crimes” requires a defendant to defend against past actions and tends to show that the defendant is “generally bad,” United States v. Burkhart, 458 F.2d 201, 204 (10th Cir.1972), we have long *1559 urged trial courts to determine that the proffered evidence:
(1) tends to establish intent, knowledge, motive, identity, or absence of mistake or accident;
(2) is so related to the charged offense that it serves to establish intent, knowledge, motive, identity, or absence of mistake or accident;
(3) has real probative value and not just possible worth;
(4) is close in time to the crime charged; and,
(5) even if relevant, be excluded if the probative value is substantially outweighed by the danger of unfair prejudice. See Kendall, 766 F.2d at 1436; United States v. Nolan, 551 F.2d 266, 271 (10th Cir.), cert. denied, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). See also Huddleston v. United States, 485 U.S. 681, 691-92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); United States v. Parker, 469 F.2d 884, 889 (10th Cir.1972).
In addition, the government should “articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.” Kendall, 766 F.2d at 1436. In Kendall, we indicated that the “trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating Rule 404(b) will not suffice.” Id. Subsequently, we held that the failure to specifically identify the purpose of the evidence was harmless error when “ ‘the purpose for admitting the other acts testimony is apparent from the record, and the district court’s decision to admit was correct.’ ” United States v. Record, 873 F.2d 1363, 1375 n. 7 (10th Cir.1989) (quoting United States v. Orr, 864 F.2d 1505, 1511 (10th Cir.1988)).
Finally, “[tjhere must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried.” United States v. Biswell, 700 F.2d 1310, 1317-18 (10th Cir.1983). A lack of clear association between the purported purpose for introduction of the evidence and the act itself renders the past conviction irrelevant, highly prejudicial and inadmissible.
A. The prior arrests of Mr. Meekes and Mr. Jackson
During the trial, evidence of several prior arrests was admitted through the testimony of an agent who was not the actual arresting officer and who could not’and did not testify concerning the actual circumstances of the arrests. The prosecutor elicited testimony of prior arrests by asking whether the officer had “knowledge” concerning the prior arrest. The officer, with the documentation of the arrests to aid him, recited the date, location and charge for each of the defendants. Mr. Meekes’s 1988 arrest in Oregon for delivery of controlled substance (cocaine) was introduced, as was Mr. Jackson’s 1987 arrest in Los Angeles for possession of a controlled narcotic substance for sale. Following testimony regarding each arrest, an instruction was given by the court explaining the limited purpose for which the evidence was to be considered. XVI R. 201-209.
Rule 404(b) concerns the admission of evidence concerning particular acts and circumstances that would tend to indicate intent, knowledge, motive or similar permissible purposes. The mere fact that an arrest was made is not, in and of itself, a “prior bad act” which the prosecution may introduce into evidence. “Evidence of prior arrest or the lodging of charges should not itself be admitted under Rule 404(b), since neither has been traditionally viewed as sufficiently probative of the basic question of whether the underlying act occurred.” 2 David W. Louisell & Christopher B. Mueller, Federal Evidence § 140 at 177 (1985) (noting Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948) wherein the Court concluded that “[ajrrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness.. It happens to the innocent as *1560 well as the guilty.”)[2] Rule 404(b) “pertains only to evidence of acts extrinsic to the charged crime.” Orr, 864 F.2d at 1510. Thus, the evidence of mere arrest, as was admitted against Defendants Meekes and Jackson, without any evidence of the par: ticular act or circumstance that would tend to show intent or knowledge, should not have been admitted as an “other crime[], wrong[], or act[]” under Fed.R.Evid. 404(b). Rule 404(b) allows evidence concerning the prior activity of a particular defendant, not simply testimony that records indicate an arrest took place.
However, error which does not affect substantial rights does not require reversal. Fed.R.Crim.P. 52(a). In Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946), the Court held that as to noneonstitutional error, the inquiry is “what effect the error had or reasonably may be taken to have had upon the jury’s decision.” The error is to be considered in “relation to all else that happened." Id. “If ... the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand____” Id. See also United States v. Rivera, 900 F.2d 1462, 1469-70 (10th Cir. 1990) (en banc) (discussing the harmless error standard for constitutional and non-constitutional error).
The Court relied on the Kotteakos test in United States v. Lane, 474 U.S. 438, 449-50, 106 S.Ct. 725, 2624-25, 88 L.Ed.2d 814 (1986) and concluded that a misjoinder was harmless error. The “overwhelming evidence of guilt” and the trial court’s “proper limiting instruction” were important considerations. Id at 450, 106 S.Ct. at 2625. A limiting instruction was given contemporaneously with the admission of the arrest evidence in this case. XVI R. 206-07. Likewise, the evidence of guilt in this case is ample. Appellants were apprehended in an apartment where a considerable amount of crack cocaine was found in various stages of manufacture, i.e. being cooked, measured and packaged. Each appellant also was linked to the Crips gang, a gang formed for the main purpose of distributing crack cocaine, according to the government’s uncontradicted evidence. The sole references to the improperly admitted arrests are brief in the context of voluminous trial testimony.
Based on the trial record as a whole, we conclude that the error in admitting the two arrests had no substantial influence on the jury’s verdict and therefore was harmless. While we do not condone the practice, a jury certainly could base its decision of guilt on the overwhelming and properly admitted evidence presented at trial. See United States v. Short, 947 F.2d 1445, 1455 (10th Cir.1991) (improper evidence of a prior drug related conviction was harmless error), cert. denied, — U.S. — , 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992).
B. The prior arrests of Mr. Robinson
Officers testified not merely to prior arrests but to specific acts of Mr. Robinson and the circumstances that culminated in arrest. Thus, such evidence was properly admitted. Concerning one such incident, Officer Smyth identified the type *1561 of drugs found in an apartment where Mr. Robinson was present and described Mr. Robinson’s attempted escape by way of a second story window. Officer McAllister described the other incident and his observation of Mr. Robinson engaging in an apparent drug transaction. Conviction is not necessary for evidence of “past acts”’ to be admitted under Rule 404(b), Huddle-ston, 485 U.S. at 689-91, 108 S.Ct. at 1501, and, as discussed, this testimony went substantially beyond the mere fact of an arrest. Here, the particular actions of Mr. Robinson were described by an officer who observed them. The trial court properly found that the evidence concerning the pri- or incidents was probative on the subject of intent and knowledge.
Mr. Robinson also objects to the trial court’s failure to give a limiting instruction concerning his prior arrests. Mr. Robinson concedes that no such instruction was requested contemporaneously with the testimony. Aplt. Robinson Brief at 46. We reach the same result as in United States v. Bridwell, 583 F.2d 1135 (10th Cir. 1978). “[N]o limiting instruction was ever offered or requested____ In the absence of such a request we may reverse only if plain error exists. Fed.R.Crim.P. 52(b). We do not believe the impact of this evidence was so critical that reversal is required.” Brid-well, 583 F.2d at 1140.
However, Mr. Robinson also points out that, although he tendered a limiting instruction to be included in the final charge, the instruction was not given by the trial court. The government counters that the instructions given adequately cautioned the jury as to the use of evidence as to “an alleged act of a like nature.” Aplee. Brief at 42. While counsel had requested a different type of limiting instruction, no objection was raised to the instruction given. It has long been the rule that a specific objection to the instructions actually given must be made to preserve any alleged error. Fed.R.Crim.P. 30; United States v. Fountain, 642 F.2d 1083, 1095 (7th Cir.), cert. denied, 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981). When “no-objection on this point was made to the court’s final instructions,” this court will only reverse in the face of plain error. Bridwell, 583 F.2d at 1140. We do not find plain error in this instance.
II. Gang Affiliation Evidence
The prosecution offered, by way of a police officer/gang expert, testimony supporting an inference that the defendants were active members of a gang known as the Crips. There was uncontroverted testimony that the main purpose of the Crips was to sell cocaine.[3] XVI R. 255. Testimony was admitted as to the presence of various blue items in the apartment. XVI R. 300-01. Mr. Robinson and Mr. Johnson wore blue outer clothing at the time of the arrest and Mr. Jackson and Mr. Meekes wore blue underwear. XVI R. 297-298. The prosecution contended that such a preference for things blue tended to show that the defendants were involved in the Crips gang. A picture of Mr. McElhannon with two other unidentified males in a gang pose known as “dogging” also was admitted. XVI R. 310.
The government argued that the evidence was not to show propensity, but rather tended to show that the defendants possessed the requisite knowledge and intent. Finding that to be a permissible purpose under Rule 404(b), the trial court admitted the evidence. Whether evidence is relevant for a permissible purpose under Rule 404(b) is left to the discretion of the trial court. United States v. Harrison, 942 F.2d 751, 759 (10th Cir.1991). The tests for admission under both Fed.R.Evid. 401 and 403 are also given deference by this court upon review. Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251, 1252 (10th *1562 Cir.1992). Only if abuse of discretion is apparent will we upset the ruling of the-trial court. We find no such abuse here.
We begin by noting recent circuit precedent on this matter which we are obliged to follow. In United States v. Hartsfield, 976 F.2d 1349 (10th Cir.1992), testimony concerning the defendant’s membership in the “Black Mafia Crip Dawgs” was admitted. Id. at 1352. A fellow gang member confirmed that the defendant belonged to the gang and a police detective served as an expert witness, explaining that the gang’s “main purpose is to distribute cocaine and crack cocaine.” Id. An envelope bearing the “Black Mafia Crip Dawgs” in.signia that was found in a car used to transport cocaine was introduced. Id. On appeal, the defendant argued that the evidence of gang affiliation was both irrelevant and prejudicial. Id. This court concluded that “this evidence was probative of the existence of the actual conspiracy alleged” and properly admitted by the trial court. Id. The position of the dissent is inconsistent with Hartsfield.
At oral argument, counsel for Appellant Robinson questioned whether proof of gang affiliation- is evidence of “other crimes, wrongs, or acts” under Rule 404(b). The government conceded that the evidence might have been wrongly classified, but argued that it would still be admissible as direct evidence, relevant to the issue of the formation and purpose of the conspiracy. If Rule 404(b) does not apply, the pertinent test becomes relevancy, (under Fed.R.Evid. 401), and the Rule 403 balancing of the probative value of the evidence against the potential harm to the defendant.
If evidence is admissible under any of the Federal Rules of Evidence, this court may affirm the admission. Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1331 (10th Cir.1984) (“[T]his court is not bound by the evidentiary basis relied upon by the trial court for the admission of the challenged evidence.”) (citing United States v. Provenzano, 620 F.2d 985 (3d Cir.), cert. denied, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980)). We conclude that “[i]t matters little, however, whether [Rule 404(b)] encompasses the challenged testimony, since the evidence was ultimately used to ‘enhance the trier’s understanding of the event, and not to prove propensity.’ ” United States v. Harrell, 737 F.2d 971, 977 (11th Cir.1984) (quoting 2 J. Weinstein & M. Berger, Weinstein’s Evidence, ¶ 404[10] at 404-61 (1982)), cert. denied, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985).
Thus, in United States v. Skillman, 922 F.2d 1370 (9th Cir.1990), cert. dismissed, — U.S. —, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991), “skinhead evidence was relevant” to a specific element of the offense, “interfering with a person’s housing rights on account of ‘race’ or ‘color.’ ” Skillman, 922 F.2d at 1374 (quoting 42 U.S.C. § 3631). After finding an avenue of relevancy, the court balanced the probative value of the “skinhead” evidence versus prejudice to the defendant under Rule 403. Indeed, in Skillman, the probative value of the evidence was wrapped up in the particular elements of the crime, including a showing of racially motivated action, and the particular defense advanced, mere presence. Id. at 1374. The Skillman opinion does not mention Rule 404(b).
Several cases decided by other circuits show that associational or affiliation type evidence is often deemed probative of something other than either character evidence or evidence of other crimes, wrongs or acts, subject to Rule 404. See Hartsfield, 976 F.2d at 1353; United States v. Lewis, 910 F.2d 1367, 1372 (7th Cir.1990) (and cases cited therein); United States v. Thomlinson, 897 F.2d 971, 973 (8th Cir.1990). Indeed, this court approached the issue in a similar fashion when considering evidence of a defendant’s affiliation with the Aryan Brotherhood. United States v. Silverstein, 737 F.2d 864, 866 (10th Cir.1984). We are persuaded that associational evidence may be directly relevant on the issues of formation, agreement and purpose of a conspiracy.
Circumstantial evidence is often the strongest evidence of conspiracy. United States v. Fox, 902 F.2d 1508, 1515 (10th Cir.), cert. denied, — U.S. —, 111 S.Ct. *1563 199, 112 L.Ed.2d 161 (1990). Gang membership helped to establish an agreement among the subjects, the purpose of the conspiracy and knowledge on the part of these defendants. We share the appellants’ concern and reiterate that affiliation evidence alone could not support a conviction. However, as the government emphasized at oral argument, gang membership was but one piece of evidence.
‘An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered____ It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence____ A brick is not a wall.’
United States v. Porter, 881 F.2d 878, 887 (10th Cir.) (quoting McCormick on Evidence, § 185 (E. Cleary 3d ed. 1984) (footnotes omitted)), cert. denied, 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). The dissent misses this point altogether, arguing that “ ‘proof that a person fits the profile, unsupported by evidence of drug trafficking, proves .nothing.’ ” Dissent at 1569-70 (quoting United States v. Simpson, 910 F.2d 154, 157 (4th Cir.1990). Here, there is ample evidence of drug trafficking in addition to the gang related items discovered at the apartment, which we conclude are not profile evidence in any event.
As for the claim that undue prejudice resulted, the trial court specifically found that the probative nature of the evidence and its value to the factfinder outweighed any potential prejudice. This balancing test is within the sound discretion of the trial court. Silverstein, 737 F.2d at 866. Only if the trial court abused its discretion would we disturb the result. We find no abuse here. See Hartsfield, 976 F.2d at 1353.
The appellants also contest the introduction of expert testimony concerning gang affiliation. On appeal, they frame the issue as one concerning the admissibility of “profile” type evidence. We disagree. We think an appropriate starting point here is a review of what is included in the term “profile” evidence. In United States v. McDonald, 933 F.2d 1519, 1521 (10th Cir.), cert. denied, — U.S. —, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991) we noted the definitions offered by several courts, and concluded that “[a] profile is simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity.” A more tailored definition was offered in Florida v. Royer, 460 U.S. 491, 493, 103 S.Ct. 1319, 1321, 75 L.Ed.2d 229 (1983), where " drug courier profile’ ” was described as “an abstract of characteristics found to be typical of persons transporting illegal drugs.”
We decline to classify the testimony offered in this case as mere “profile” evidence. Courts which have dealt with the issue effectively decided that the characteristics that make up the profile were indicators of a specific illegal activity, most usually the transportation of drugs. McDonald, 933 F.2d at 1521. Generally, profiles are used to detect crime, before the police have investigated or gathered evidence. Conversely, here, the alleged profile characteristics did not necessarily indicate, nor did the expert equate the characteristics to, a specific criminal activity. Rather, the expert testified that these particular items and clues lead him to the conclusion that the defendants were gang members. This evidence was used after the investigation was complete to explain the items found in the possession of the defendants. The prosecution was later able to connect gang membership to the uncontroverted evidence that the main purpose of the Crips was to traffic in crack cocaine.
Certainly, the gang-related items are similar to other items found at the scene, such as a beeper, cellular telephone and triple-beam scale, which are undoubtedly admissible as circumstantial evidence. Similar to tools of the trade, the gang-related items may necessitate the appearance of an expert witness if the jury could not understand the significance of possession of these items. McDonald, 933 F.2d at 1522 (evidence concerning possession *1564 and probable use of single-édge razor, beeper and gun was admissible). See also United States v. Martinez, 938 F.2d 1078, 1083 (10th Cir.1991) (testimony regarding possession of guns and scales is admissible as “ ‘tools of the trade’ — that is, means for the distribution of illegal drugs”) (citing United States v. Wiener, 534 F.2d 15, 18 (2d Cir.), cert. denied, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976)); United States v. Young, 745 F.2d 733, 761 (2d Cir.1984) (expert testimony was permissible “to explain physical evidence [of heroin manufacturing paraphernalia] that was in the case”), cert. denied, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).
The dissent, however, mischaracterizes the evidence when it claims the expert “testified that the Defendants exhibited characteristics that were indicative of Crips gang members.” Dissent at 2. The evidence offered related to the items found at the arrest scene and particular actions by the defendants at the arrest scene, the same location where the narcotics were confiscated. The expert simply explained the meaning of the physical evidence. The dissent’s discussion of profile evidence is therefore not pertinent because the evidence presented in this case is direct evidence. The exemplar cases of the dissent, United States v. Williams, 957 F.2d 1238, 1240 (5th Cir.1992) and United States v. Simpson, 910 F.2d 154, 155 (4th Cir.1990), involve testimony concerning suspicious behavior in airports which led officers to approach the defendants. In both cases, this evidence was then used as substantive evidence of guilt. The officers in Simpson observed a defendant attempt to pass through an airport security checkpoint with $450 in cash, “suspicious looking metallic objects” and a pistol, giving them cause to investigate. Simpson, 910 F.2d at 155. In Williams, evidence concerning the nervousness and the slow movement of the defendant could not be used as substantive evidence of guilt. Williams, 957 F.2d at 1242. The court emphasized:
The profiles themselves are nothing more than a compilation of characteristics which aid law enforcement officials in identifying persons who might be trafficking in illegal narcotics. But the fact that an individual fits the profile does not necessarily mean that the evidence in a particular case will show that the person was carrying drugs. It is the evidence showing the person’s connection to drug trafficking that must form the basis for the conviction.
Id. (emphasis added). Items found in the apartment where both cocaine and the defendants were discovered are probative of the defendant’s “connection to drug trafficking.” Id.
Profile evidence is a “point by point examination of profile characteristics” that enable the investigator to justify pursuing the matter. United States v. Quigley, 890 F.2d 1019, 1022-24 (8th Cir. 1989), cert. denied, 493 U.S. 1091, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990). As the dissent points out, because of the limited usefulness of profiles, courts have declared testimony concerning the defendant’s alignment with a particular profile incompetent as direct evidence of guilt. But after an investigation has culminated in the execution of search warrant, the evidence of criminal activity gathered-at the scene is admissible. United States v. Dunn, 846 F.2d 761, 763 (D.C.Cir.1988) (officer may explain the packaging paraphernalia, including vials and wax paper bags found at the defendant’s home); Young, 745 F.2d at 761 (expert testified as to the paraphernalia found at an alleged “heroin mill”).. Indeed, it is a valuable “brick” that the prosecution may use to construct the “wall” of its case.
In McDonald, 933 F.2d at 1523, we “reserved] the question of whether expert testimony regarding profiles is — by itself— substantive proof of crime____” We again decline to decide that matter, both because this was not evidence of a profile under the McDonald definition and because the expertise of this particular witness was necessary. The specialized knowledge did assist the trier of fact in understanding the evidence. Fed.R.Evid. 702. The average juror would fail to recognize the “significance of this evidence without the particular background knowledge” of gangs and *1565 the philosophy of gang membership. McDonald, 933 F.2d at 1522. “Without [the expert testimony], the basic evidence would leave a juror puzzled.” Id,
Finally, the appellants argue that associational evidence is unconstitutional according to Dawson v. Delaware, — U.S. —, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), where the Court found that a stipulation read to the jury concerning the Aryan Brotherhood was violative of the defendant’s First Amendment rights. That case is distinguishable, both because it involved the penalty phase of a trial and also because the evidence did not go beyond “abstract beliefs.” Id. at -, 112 S.Ct. at 1098. The government, in Dawson, did not present an adequate foundation that would link the fact of an association to an issue relevant in the penalty phase. “Delaware might have avoided this problem if it had presented evidence showing more than mere abstract beliefs on Dawson’s part, but on the present record one is left with the feeling that the Aryan Brotherhood evidence was employed simply because the jury would find these beliefs morally reprehensible.” Dawson, — U.S. at —, 112 S.Ct. at 1098. A similar result followed in United States v. Roark, 924 F.2d 1426, 1430 (8th Cir.1991) when the prosecution called two witnesses to testify “generally about the Hell’s Angels [gang] and their activities.”
After a review of the record, we believe that the government presented adequate expert testimony as to the meaning, of the gang affiliation evidence. Gang experts from Albuquerque and from California testified as to the patterns of behavior of the gangs and the gang connection to “crack” and .cocaine. The meaning of the various objects and writings found at the location where the warrant was executed were explained. The offenses charged in this case involved distribution of crack, the very purpose of the Crips gang. The foundation that was lacking in Dawson is present in this case. The evidence was not “general,” as in Roark, but included the specific details of these defendants’ activities and items found in the apartment where a drug manufacturing operation was discovered.
III. Equal Protection and Due Process Challenges
Both Mr. Jackson and Mr. Meekes argue that the Sentencing Guidelines have a discriminatory impact based on the differentiation of crack cocaine from other forms of cocaine. Because African-Americans, they urge, are more likely to use and sell cocaine in its rock form than Caucasians and because cocaine base (rock) is punished more severely, the guidelines classify offenders based upon race. We find the reasoning and discussion in United States v. Galloway, 951 F.2d 64, 65-66 (5th Cir.1992), sound and agree that there is a rational relationship between the classification and a legitimate end.
We have rejected a similar argument under the due process clause. United States v. Turner, 928 F.2d 956, 960 (10th Cir.) (“We join those circuits holding that the different penalties for cocaine base and cocaine in its other forms do not violate due process.”), cert. denied, — U.S. —, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). That, case also quells Mr. Jackson’s argument that the guidelines are unconstitutionally vague. Turner, 928 F.2d at 960 (“We find that defendant has not established that the term encourages arbitrary and discriminatory enforcement or that it is vague as applied to his conviction and sentence.”).
Mr. Jackson, however, expands his due process argument to object to the mandatory nature of the Sentencing Guidelines. This, he contends, is an impermissible exercise of judicial power by the legislative branch. We have previously rejected this type of challenge and appellant does not persuade us otherwise. United States v. Hatch, 925 F.2d 362, 363 (10th Cir.1991) (citing McMillan v. Pennsylvania, 477 U.S. 79, 84-91, 106 S.Ct. 2411, 2415-19, 91 L.Ed.2d 67 (1986)); United States v. Alamillo, 941 F.2d 1085, 1085-86 (10th Cir.1991).
IV. The Obstruction of Justice Enhancements
Appellants strenuously object to the two-point enhancement for obstruction *1566 of justice under U.S.S.G. § 3C1.1. These enhancements were- allowed when the trial court found that each defendant had provided a false name, date of birth and place of birth.
We recently held that a two-point enhancement for obstruction of justice was improper because' “[n]one of the false statements made by [the defendant] to the investigators impeded the investigation.” United States v. Urbanek, 930 F.2d 1512, 1514 (10th Cir.1991). Mr. Urbanek’s denial of any use of aliases in the past was insufficient to impede the investigation. The court continued, noting that “[i]n light of the 1990 Application Notes, even if Mr. Urbanek had given an alias, the enhancement would not be justified since it is undisputed that his false statements did not significantly impede or obstruct the investigation.” Urbanek, 930 F.2d at 1515 (citing U.S.S.G. § 3C1.1, comment, (n. 3(g)) (footnotes omitted). “[A]ctual, significant hindrance to investigation is necessary'when false aliases are given, not under oath, during the investigation.” Id., 930 F.2d at 1515 n. 2. Because any statements to either pretrial services or investigating officers were not- under oath, we therefore look to the record to determine whether “significant hindrance” of the investigation occurred.
Mr. Jackson represented himself to be Keith Jackson to police and pretrial service officers, but through fingerprint analysis, he was identified as Kevin McElhannon. XXI R. 58-59. However, the government concedes that Mr. Jackson was known in Albuquerque solely as Jackson and that officers found, at the scene of the arrest, a California driver’s license with Mr. Jackson’s picture and the name Kevin McElhan-non. XXI R. 59. Mr. Meekes used the name Meekes when he was arrested and throughout trial, although he later admitted that his true name is Orris Weathing-tqn. XXI R. 22. Mr. Robinson provided his alias both at the time of arrest and to pretrial services. XXI R. 92. All defendants utilized their aliases throughout trial, even though their true names were known by that time and used by various witnesses.
Mr. Meekes directs us to United States v. Manning, 955 F.2d 770 (1st Cir.1992), in response to the government’s contention that a fair amount of research and effort was necessary to determine the true identity of the appellants. Aplt. Meekes Reply Brief at 4. Although fingerprinting, cheeking and crossreferencing may have been required, we, as the First Circuit in Manning, cannot conclude that the investigation was significantly hindered on this record.
We liken the case to United States v. Tabares, 951 F.2d 405 (1st Cir.1991). In that case, the court could not “find, nor can we realistically imagine how the falseness of the [social security] number could have impeded the investigation.” Tabares, 951 F.2d at 411. In fact, the Tabares court remarked that it was more likely that the incorrect information aided in the investigation of the defendant because his tax returns were' filed with the social security number given and his prior work records were associated with that number, as opposed to his “real number.” Id. Similarly, here, Mr. Meekes gave the name under which he had rented the apartment where the cocaine was found. Mr. Robinson gave the name under which he had been arrested twice within the last year, arrests which the government introduced. Mr. Jackson’s California driver’s license was located in the apartment with his real name.
Still, it is not clear from the record if the trial court correctly applied the Guidelines under the principles of Urbanek. Therefore, the sentences must be remanded for reconsideration of the applicability of this particular enhancement. Our discussion here does not preclude the enhancement if “actual, significant hindrance to investigation” can be shown. Urbanek, 930 F.2d at 1515 n. 2.
V. The Government’s Closing Argument
In the course of closing argument, the government remarked that what the jury had heard from Mr. Jackson during his testimony were “lies.” XIX R. 847. The government made two additional refer- *1567 enees to lying. Id. Mr. Jackson contends that these statements were improper and prejudicial, citing United States v. Garcia, 818 F.2d 136 (1st Cir.1987). We reiterate and emphasize the point made in Garcia— “a prosecutor would be well advised to avoid directly accusing a defendant of lying.” Garcia, 818 F.2d at 143-44. As in Garcia, though, “we are confident that the statements in this case would have been perceived only as commentary on the implausibility of the defendant’s story.” Id.
VI. The Motion to Suppress
In challenging the district court’s denial of their suppression motion, all appellants rely heavily on the testimony of a witness-neighbor who testified that the time between the officers’ knock on the apartment door and their breaking in was insufficient for anyone to have responded. Certainly, if it were established that “the executing officers failed to announce their authority and purpose before forcibly entering the dwelling, and that no exigent circumstances were shown, the evidence seized must be suppressed as the fruit of an unlawful search.” United States v. Ruminer, 786 F.2d 381, 383 (10th Cir.1986) (citing Sabbath v. United States, 391 U.S. 585, 586, 589, 88 S.Ct. 1755, 1756, 1757, 20 L.Ed.2d 828 (1967)). However the trial judge specifically found that the contrary testimony of the officer was more reliable. The officer was planning the maneuver and aware of what was likely to occur, in contrast to a neighbor inside his own apartment talking with friends, startled by loud and unfamiliar noises. There was no finding that the neighbor was not a credible witness, simply that it was more likely that the officer would have made a point of noting and remembering the sequence of events. Because a finding of fact is involved, this court gives deference to the trial court and will only reverse if the finding is clearly erroneous. Ruminer, 786 F.2d at 383. We are satisfied that the district court’s factual finding is not clearly erroneous.
VII. Sufficiency of the Evidence
On appeal, the record is reviewed in a light most favorable to the government to determine whether the evidence, both direct and circumstantial, and the reasonable inferences connected to that evidence, is such that any rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A criminal conviction may be sustained on circumstantial evidence as well as inferences drawn therefrom, considered in the aggregate. United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).
We have reviewed the record and find sufficient evidence supporting the convictions. Crack cocaine was found “drying” on paper towels in the kitchen, sitting on triple-beam scales and packaged, in both the kitchen and living room areas. A cellular telephone and a pager were found on the living room divider. Two guns were seized, one was in the southeast bedroom and another was found under the couch in the living room. We have noted that these items are “tools of the trade” for those who deal in drugs. United States v. Mendoza-Salgado, 964 F.2d 993, 1008 (10th Cir.1992). The apartment was rented to Mr. Meekes. Mr. Jackson had used the apartment to leave various personal items and had purchased furniture for the apartment. The neighbor testified that he had seen Mr. Meekes, Mr. Jackson and perhaps Mr. Robinson coming and going from the apartment at other times. In addition, there was the gang affiliation evidence discussed previously and testimony that both Robinson and Meekes had admitted membership in the Crips. XVII R. 563-64.
Defendants, both at trial and on appeal, argued that the evidence establishes no more than their “mere presence” at a crime scene, which cannot sustain a conviction. United States v. Savaiano, 843 F.2d 1280, 1294 (10th Cir.1988). “However, a jury need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt.” United
*1568 States v. Richard, 969 F.2d 849, 856 (10th Cir.) (citing United States v. Espinosa, 771 F.2d 1382, 1393 (10th Cir.), cert. denied, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985)), cert. denied, — U.S. —, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992). Indeed, presence at the scene where drugs are being processed and packaged is “a material and probative factor which the jury may consider.” Savaiano, 843 F.2d at 1294. Drug dealers of any size and crack cocaine manufacturers probably are reticent about allowing the unknowing to take view of or assist in the operation. Cf. Richard, 969 F.2d at 856. The evidence presented, taken with all its inferences in a light most favorable to the government, is sufficient to support the conviction of each defendant.
VIII. The Dangerous Weapon Sentence Enhancement
Findings of fact that are related to the Sentencing Guidelines are reviewed for clear error. United States v. Williams, 897 F.2d 1034, 1040 (10th Cir. 1990), cert. denied, — U.S. —, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). The relevant finding to justify a § 2D1.1(b)(1) enhancement was discussed in United States v. McFarlane, 933 F.2d 898, 899 (10th Cir.1991) . There we concluded that “sentencing courts [may] attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him.” Id.
The trial court’s factual findings are adequate under McFarlane. The trial court made clear that it found there was a “difference between Mr. Robinson and Mr. Meekes and Mr. McElhannon” with respect to the weapons in the apartment:
I think it’s pretty clear that both Meekes and McElhannon had regularly been in that apartment for quite sometime and there’s much more reason to believe that they should have had knowledge of that weapon and probably did have knowledge of that weapon ... [F]or the limited time that Mr. Robinson was there, I don’t think I can find by a preponderance of the evidence that ... there was sufficient knowledge on his part of the presence of the weapon____
XXI R. 98. We therefore deny the cross-appeal of the government on this point and affirm the district court’s refusal to enhance Mr. Robinson’s sentence.
The dissent argues that the court “effectively overrode” the jury’s acquittal of the defendants on the count charging use of a firearm. This position is clearly contrary to established law. United States v. Eagan, 965 F.2d 887, 892 (10th Cir.1992); United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992).
IX. Specific Performance of Plea Agreement
Prior to trial, Mr. Meekes entered into negotiations with the government and a written agreement was apparently drawn but not signed by the government. In effect, Mr. Meekes would agree to plead guilty to the charges in the indictment and provide substantial assistance, both by way of testimony against his codefendants as well as other information regarding drug trafficking. The government argued that no agreement came into existence because its representative did not sign the letter agreement it drafted and sent to Mr. Meekes. I R.S. 9. Sometime after these negotiations but before trial, Mr. Meekes granted an informational interview with the government.
Mr. Meekes relies on Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), but misapprehends the lesson of that case and fails to recognize the extreme difference in factual settings. Santobello concerns the prosecution’s behavior after an agreement has been reached with a defendant and upon which a defendant relies. Santobello, 404 U.S. at 259, 262, 92 S.Ct. at 497, 499. The proposition established in that case, that “a guilty plea induced by an unkept bargain is involuntary,” is simply not applicable here. See United States v. Smith, 953 F.2d 1060, 1066 (7th Cir.1992).
In a pretrial evidentiary hearing, the trial court did not make a specific finding as to *1569 whether a valid agreement was entered into between the government and Mr. Meekes. Instead the court concluded that “although ... the letter of October 15, 1990, signed'by [Mr. Meekes’ attorney] and Mr. Meekes may well be considered a binding contract under contract law,” the point was moot because, during Mr. Meekes’ interview he made “false, misleading or materially incomplete” statements which gave the government “the right ... to withdraw from [any agreement.]” I R.S. 71-72.
We agree with the trial court. Assuming, arguendo, that the agreement did become binding, Mr. Meekes would hot be entitled to specific performance. “When a plea agreement leaves discretion to_. the prosecutor, the court’s role is limited to deciding whether the prosecutor has made its determination in good faith. United States v. Vargas, 925 F.2d 1260, 1266 (10th Cir.1991) (citing United States v. Rexach, 896 F.2d 710, 714 (2d Cir.), cert. denied, — U.S. —, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990)). The trial court specifically decided that “the Government would be acting in good faith if it declined to make a motion for downward departure under section 5K1.1 of the guidelines.” I R.S. 11.
We reject the task of reviewing which lies are relevant and which lies are not, as the dissent is prepared to do. We note, however, that the terms of the agreement called for Meekes to reveal information about his supplier. During the forty-five page interview, Meekes gave several first names, but could not remember phone numbers, addresses or last names. While Meekes contended later that he could gather that information, “[t]he plea agreement held out the promise of a motion for a downward departure in return for the rendering of substantial assistance to the government; it did not promise to reward mere cooperative intent.” Vargas, 925 F.2d at 1266.

Conclusion

We affirm each of the appellants’ convictions, but remand each sentence to the district court with instructions to vacate the sentences and resentence in accordance herewith.

. Later, their true identities were found to be Leland Kirk, Orris Weathington, Kevin McEl-hannon and Terry Johnson, respectively.

. We agree with the general rule as stated by Louisell and Mueller notwithstanding their incorrect cite from the Tenth Circuit case. The erroneous reference in the treatise is as follows:

Contra:

United States v. Brown, (1985, CA10 Okla) 770 F.2d 912, 914 (trial court "properly allowed evidence of the arrest to be admitted for propensity purposes” under FRE 404(b) [this careless language approves testimony by deputy sheriff who had personally observed defendant engage in narcotics transaction, held admissible here as evidence of "scheme”].)
2 Louisell & Mueller, Federal Evidence, § 140 n. 10 at p. 64 (1992 Supp.) (emphasis added) (quoting United States v. Brown, 770 F.2d 912, 914 (10th Cir.1985), rev'd on other grounds, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). The actual language of Brown makes no reference to propensity, rather it provides that "the district judge properly allowed evidence of the arrest to be admitted for permissible purposes." Brown, 770 F.2d at 914 (emphasis added). Indeed, Brown directly supports our discussion here. Not only was a purpose other than propensity identified by the trial court, but also the deputy sheriff who had actually arrested the defendant testified, describing the actual events that lead to defendant’s prior arrest for drug smuggling. We found the defendant’s prior acts "highly probative of defendant's scheme to possess and distribute marijuana.” Id. Brown is neither careless nor out-of-step with the general rule.

. In closing argument, the prosecution stated that the "sole" purpose of the Crips was to promote the sale of crack. The actual testimony was that distribution was a "primary" purpose. The jury was instructed that the arguments of counsel could not substitute for their independent recollection of the evidence. Given that no other testimony concerning the purpose of the Crips was adduced, the dissent's characterization of the government’s statements as "egregious” is extreme.