986 F.2d 1431
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie Manola REYES-AMONTE, Defendant-Appellant.
 No. 92-3109.
 United States Court of Appeals, Tenth Circuit.
 Jan. 21, 1993.
 
 Before TACHA, BALDOCK and KELLY, Circuit Judges.*
 ORDER AND JUDGMENT**
 BALDOCK, Circuit Judge.
 
 
 1
 Defendant Eddie Manola Reyes-Amonte appeals his convictions for conspiracy to distribute cocaine, 21 U.S.C. § 846, and distribution of cocaine. Id. 841(a)(1). Defendant contends that the district court erred in admitting evidence of his prior drug sales under Fed.R.Evid. 404(b), and in failing to grant a new trial based on newly discovered evidence pursuant to Fed.R.Crim.P. 33. We have jurisdiction under 28 U.S.C. § 1291, and we review for an abuse of discretion. See United States v. Hartsfield, 976 F.2d 1349, 1352 (10th Cir.1992) (admission of Rule 404(b) evidence reviewed for abuse of discretion); United States v. Kelley, 929 F.2d 582, 586 (10th Cir.) (denial of motion for a new trial based on newly discovered evidence "addressed to the sound discretion of the trial court"), cert. denied, 112 S.Ct. 341 (1991).
 
 
 2
 On July 24, 1991, an undercover officer negotiated the sale of a pound of cocaine with Eufemio Boria, Defendant's alleged coconspirator. Defendant entered Boria's office during the negotiation, and Boria assured the undercover officer that "everything was okay," although there was no discussion about cocaine in Defendant's presence. After a brief conversation in Spanish between Defendant and Boria, Defendant left the office. Negotiations between Boria and the undercover officer resumed, and Boria told the undercover officer that he would have to "check with his people" and to telephone him later that afternoon. The undercover officer left Boria's office.
 
 
 3
 A surveillance officer observed Boria meeting with Defendant and a third person, John Jimenez, at a restaurant later that same afternoon. Following this meeting, the undercover officer telephoned Boria. Boria told the undercover officer that he had "talked to his people," and instructed him to come to Boria's office that evening. When the undercover officer arrived at Boria's office that evening, Boria told him that he was waiting for a telephone call from "his people" and that he would have to first count the money. While he was counting the money, Boria received a telephone call and had a brief discussion in Spanish. When he hung up, Boria told the undercover officer that the caller was his cocaine supplier.
 
 
 4
 At Boria's instruction, the undercover officer followed him in his own car to a parking lot where Boria led him to a parked station wagon. At Boria's instruction, the undercover officer reached under the seat and removed a package containing the cocaine. The surveillance officer observed Defendant across the street where he appeared to be watching the parking lot. Boria and Defendant were subsequently arrested.
 
 
 5
 Boria testified for the government. Over Defendant's objection, Boria testified that he had purchased cocaine from Defendant in the past, and had twice referred other customers to Defendant in exchange for some cocaine. Boria also testified that Defendant was the source of the cocaine for the transaction at issue.[1] Additionally, a cellular telephone was seized from Defendant at the time of his arrest, and telephone records showed calls between Boria and that telephone during the period when Boria was negotiating with the undercover officer. Further, Defendant possessed a set of car keys to the car from which the undercover officer recovered the cocaine. Defendant denied his involvement in the transaction and claimed that he was "set up" by Jimenez.
 
 
 6
 After the jury found Defendant guilty, he moved for a new trial based on newly discovered evidence. See Fed.R.Crim.P. 33. At a hearing on Defendant's motion,[2] Gene Fitzsimmons testified that in August 1991 (within a month after Defendant's arrest but several months prior to Defendant's November 1991 trial), law enforcement officers searched his house and discovered a large quantity of cocaine. Upon discovering the cocaine, the officer's went next door to the house of Gene Fitzsimmons' daughter, Sonya Fitzsimmons,[3] and asked Jimenez "where's the rest?" Michelle Clayton testified that she observed Jimenez talking to law enforcement officers and leaving in a car with them, although it is not clear from the limited record before us, see supra note 2, whether this was the same day that officers searched Gene Fitzsimmons' house. The "gist" of the testimony of Gene Fitzsimmons and Clayton, as characterized by the district court was that Jimenez was an informant and that he had tipped the officers to the cocaine at Gene Fitzsimmons house.
 
 
 7
 Defendant also presented the testimony of Steve Fitzsimmons (Gene's son and Sonya's brother), who testified that in December 1991, while he was attempting to cooperate with the government, Officer Alan Prince told him that Jimenez was a government informant and that Jimenez had set up Defendant. Officer Prince denied making such a statement, and the district court found that Steve Fitzsimmons' testimony lacked an indicia of truthfulness. Steve Fitzsimmons also testified that he had offered the government information about Jimenez in the past, but they had no interest.
 
 
 8
 In regard to Defendant's claim that the district court erred in admitting evidence of Defendant's prior drug sales, Federal Rule of Evidence 404(b) provides as follows:
 
 
 9
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 10
 Fed.R.Evid. 404(b). Four factors are considered in determining the admissibility of prior act evidence: (1) whether the evidence is being offered for a proper purpose; (2) whether the evidence is relevant to that purpose; (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice; and (4) whether a proper limiting instruction is given upon request. Huddleston v. United States, 485 U.S. 681, 691-92 (1988). The district court found that the evidence of Defendant's prior drug sales was admissible to show Defendant's knowledge of the conspiracy, possible motive, intent, and common plan, and that this evidence was "highly probative" of the relationship between Defendant and Boria. The district court specifically found that the probative value of the evidence was not substantially outweighed by any danger of unfair prejudice. Finally, the district court gave a limiting instruction. We find Defendant's claim that evidence of his prior drug sales was not relevant because they were dissimilar to the transaction at issue to be without merit. On the contrary, the prior sales were similar in that Boria brokered cocaine sales which Defendant supplied. Evidence of a defendant's prior drug dealing is relevant to show the defendant's intent to enter into a drug conspiracy, United States v. Harrison, 942 F.2d 751, 759-60 (10th Cir.1991), and to show a defendant's participation in a drug distribution plan. United States v. Jefferson, 925 F.2d 1242, 1250 (10th Cir.), cert. denied, 112 S.Ct. 238 (1991). Accordingly, we find no abuse of discretion in the district court's admission of Boria's testimony concerning Defendant's prior drug dealings.
 
 
 11
 Similarly, we find no merit in Defendant's claim that the district court erred in refusing to grant a new trial based on newly discovered evidence. In a motion for a new trial based on newly discovered evidence, the defendant carries the burden to show that the evidence was discovered since trial, that the defendant exercised reasonable diligence in failing to discover the evidence prior to trial, and that the evidence is not merely cumulative or impeaching, but is material and of such a character that a new trial would probably produce a different result. United States v. Franklin, 704 F.2d 1183, 1192 (10th Cir.), cert. denied, 464 U.S. 845 (1983); United States v. Maestas, 523 F.2d 316, 320 (10th Cir.1975). We recognize that Defendant claimed at trial that Jimenez had set him up and the new evidence tends to support this claim as it indicates that Jimenez was a government informant. However, we fail to see how Jimenez's status as an informer would have affected the outcome of the trial in light of Boria's testimony that Defendant supplied the cocaine. While Defendant claimed that Jimenez in fact supplied the cocaine, the new evidence was simply not probative on this issue, and therefore is unlikely to have resulted in Defendant being acquitted. Moreover, we note that with respect to the testimony of Gene Fitzsimmons and Clayton concerning their observations prior to Defendant's trial of Jimenez's cooperation with the government, Defendant made no showing that he exercised reasonable diligence in failing to discover this evidence. Finally, with respect to the testimony of Steve Fitzsimmons, the district court found that it lacked an indicia of truthfulness. Accordingly, we find no abuse of discretion in the district court's denial of Defendant's motion for a new trial based on newly discovered evidence.
 
 
 12
 AFFIRMED.
 
 
 
 *
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case therefore is ordered submitted without oral argument
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Although neither party has provided as part of the record on appeal the trial transcript which includes Boria's implication of Defendant in the transaction at issue, both parties agree that Boria's testimony implicated Defendant in this transaction
 
 
 [2]
 Again, we note that neither party has included as part of the record on appeal the transcript of the hearing on Defendant's motion for a new trial. The factual recitation herein is gleaned from the undisputed facts in the parties' briefs and from the district court's written order denying Defendant a new trial
 
 
 [3]
 The district court noted that Sonya Fitzsimmons had a child by Defendant, and that Sonya was present in court during Defendant's trial