UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie Davis BROWN, a/k/a Will
Brown, Defendant-Appellant.

No. 84–2290.

United States Court of Appeals,
Tenth Circuit.

Aug. 20, 1985.

Stephen J. Korotash, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty. and Ted A. Richardson, Asst. U.S. Atty., Oklahoma City, Okl., on brief), for plaintiff-appellee.

Fred Haddad, Fort Lauderdale, Fla., for defendant-appellant.

Before MOORE, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Defendant-Appellant Willie Davis Brown here appeals from a conviction in the United States District Court for the Western District of Oklahoma. The charge was conspiracy to violate 21 U.S.C. § 841(a)(1) by possession with intent to distribute marijuana and cocaine. On appeal, defendant contends that:

(1) the district court erred in admitting similar fact evidence of a prior drug arrest under Fed.R.Evid. 404(b);

(2) the prosecutorial misconduct denied him the right to an impartial jury;

(3) the evidence of his participation in the conspiracy was insufficient to support the conviction; and

(4) the government's closing arguments were grounds for a mistrial.

The facts are as follows. The evidence at trial was largely from the testimony of co-conspirators. It established that defendant was the "Florida connection" in a drug distribution operation that transported marijuana from Florida to Oklahoma City, Oklahoma.

On November 24, 1981, police stopped a van and arrested its occupants, Keith Holley, Donald Weber and Terry Holley. They had failed to stop at an agricultural inspection station in the rural Florida countryside. A search of the van by the police produced 170 pounds of marijuana. They found the van to be registered to a co-conspirator, Sam Ponder, who was subsequently arrested. The police then stopped an Oldsmobile automobile that had been following the van. The occupants Greg Holley and Curtis Godwin were arrested after a search disclosed 100 pounds of marijuana. Testimony at trial established that co-conspirators Godwin and Weber had completed a large drug transaction at defendant's home in Florida. Godwin testified that he and Terry Holley bagged 57 pounds of marijuana at defendant's residence.

Further, co-conspirator Michael Mustin testified that he and Terry Holley had purchased 200 pounds of marijuana and half a pound of cocaine for the sum of $100,000 on a previous occasion.

During the trial, the government called Ralph Hernandez, a deputy sheriff from Broward County, Florida. Mr. Hernandez testified that he had arrested defendant on December 5, 1980, for possession of marijuana. The district judge gave the jury a limiting instruction on the use of this testimony as being solely to establish a plan or motive. Fed.R.Evid. 404(b).

Only the defendant and Samuel Ponder were ultimately tried for the drug conspiracy. Ponder was represented by a prominent member of the Oklahoma State Senate who is a black man. Both the defendant and Ponder are also black. During the jury selection stage, the government excused all black venire members through preemptory challenges. Evidence during the second day of jury selection showed that Mr. Ted Richardson, the prosecutor, told the jury clerk that: "We would like to have as few black jurors as possible." The jury clerk told the district judge in chambers that she was not influenced by Richardson's request. The government preemptorily excused all prospective black jurors.

Defendant was convicted by a jury of the conspiracy on June 20, 1984, and was sen-

tenced to five years imprisonment. He filed a motion for judgment of acquittal or alternatively for a new trial. Both of these were denied. We hold that the district court correctly denied these motions and affirm defendant's conviction.

■ *First*, we address defendant's contention that the district court erred in admitting the testimony of Deputy Sheriff Hernandez who had arrested the defendant at a Florida airport in 1980. The Deputy Sheriff testified that he observed the defendant hand over a brown suitcase to a Mr. Banks at the airport. The defendant was arrested after the suitcase was found to contain seventeen pounds of marijuana. The defendant asserts that this previous arrest was inconclusive and prejudiced him. We find no merit in this argument. We conclude that the district judge properly allowed evidence of the arrest to be admitted for permissible purposes. Fed.R.Evid. 404(b) explicitly allows "evidence of other crimes, wrongs or acts for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The prior act at issue here was highly probative of defendant's scheme to possess and distribute marijuana. The Tenth Circuit has long recognized the relevance of previous wrongs and crimes in the context of narcotics violations. We have little difficulty affirming this exception in the circumstances of the present case. *United States v. Nolan*, 551 F.2d 266 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977); *United States v. Leaphart*, 513 F.2d 747 (10th Cir.1975); *United States v. Pennick*, 500 F.2d 184 (10th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 629, 95 L.Ed.2d 647 (1974). The district judge eliminated any prejudice to the defendant by a limiting instruction to the jury that the evidence "was not to be considered as proof of the offense at trial, but for the limited purpose of determining motive, intent, knowledge, absence of mistake."

■ *Second*, we consider whether the government's use of preemptory challenges to exclude all potential black jurors, com-

bined with the prosecutor's request to the jury clerk concerning the racial composition of the jury, violated the defendant's right to an impartial jury. Twenty years ago in *Swain v. Alabama*, 380 U.S. 202, 221, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965), the Supreme Court held that a violation of a defendant's right to equal protection under the Fourteenth Amendment could not be proved by the mere showing that the prosecutor has struck all black venire members from the jury panel in a single case. This Circuit has previously held that the appropriate analysis for a claim that a defendant's right to an impartial jury has been violated is the framework articulated in *Swain*. *United States v. Jenkins*, 701 F.2d 850, 860 (10th Cir.1983). This Circuit therefore requires a showing of "systematic and intentional conduct on the part of the Government calculated to exclude Blacks from juries." *Id.* In the present case, there has been no showing that the prosecution was responsible for excluding blacks in "case after case." *Swain, supra*, 380 U.S. at 223, 85 S.Ct. at 837. Because the defendant has not met this threshold requirement, we must conclude that he has no valid claim of an unconstitutional use of the preemptory challenge. *Jenkins, supra*, at 860.

■ We find no merit in the defendant's argument that communications made by the prosecutor to the jury clerk on the racial composition of the jury indicated a pattern of systematic exclusion of black jurors. Certainly the action of the government was improper. However, the government's action did not establish a prima facie constitutional violation. The jury clerk disregarded the government's request to limit the number of black venire members, and the government's action had no impact on the possibility that the jury would not represent a cross-section of the community. *See McCray v. Abrams*, 750 F.2d 1113, 1129 (2nd Cir.1984). Nevertheless this incident must be condemned even though it did not effect the outcome. The statement made by the district attorney was not shown to have played any part in the

 

selection of the jury. Hence, although this statement was an ignorant one, it was not revealed to the jury and did not play any part in the outcome of the case.

■ We also find no merit in the defendant's argument that he was prejudiced because the district judge did not immediately inform him of the inappropriate contact made by the prosecution with the jury clerk concerning the race of venire members. Later the trial judge explained the matter to the defense counsel and did so thoroughly. Since we conclude that the trial court was conscientious and did not influence selection of the venire members, we must also determine that the defendant suffered no prejudice from this source.

*Third,* we consider whether there was sufficient evidence to support defendant's conviction. Such a question is one of fact for the jury to decide. *United States v. Dickey,* 736 F.2d 571, 581 (10th Cir.1984). *See also United States v. Petersen,* 611 F.2d 1313, 1327 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980); *United States v. Watson,* 594 F.2d 1330, 1340 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). We must review the jury's decision in the light most favorable to the government, *United States v. Dickey, supra,* at 581; *United States v. Pilling,* 721 F.2d 286, 288–89 (10th Cir.1983), to determine whether there was sufficient evidence to establish the defendant's participation in the conspiracy.

■ Our review of the evidence convinces us that the jury properly found that the defendant participated in the drug conspiracy as "the Florida connection." Trial testimony from Godwin and Weber placed defendant at the house where large drug transactions were completed. The other testimony indicates that co-conspirators Mustin and Terry Holley exchanged money for drugs on another occasion. We must conclude that there is an abundance of evidence that defendant participated in this conspiracy.

*Fourth,* we consider whether statements made by the prosecution during closing argument were prejudicial to the defendant. We must conclude that none of the statements constitute grounds for a mistrial. We find no errors in the district court's rulings and affirm on all grounds.