UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas C. HILL, Defendant–Appellant.

No. 93–3316.

United States Court of Appeals,
Tenth Circuit.

July 10, 1995.

Robin D. Fowler, Asst. U.S. Atty., Kansas City, KS (Randall K. Rathbun, U.S. Atty., Kansas City, KS, with her on the brief), for plaintiff-appellee.

Charles D. Dedmon, Asst. Federal Public Defender, Topeka, KS (David J. Phillips, Federal Public Defender, Topeka, KS, with him on the brief), for defendant–appellant.

Before TACHA, LOGAN, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Defendant–Appellant Thomas C. Hill ("Hill") appeals his jury conviction on one count of possession of cocaine base in violation of 21 U.S.C. § 844, and one count of possessing a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). Hill argues that the district court erred: (1) by admitting witness testimony that Hill was a "dope dealer"; (2) by admitting evidence under Fed.R.Evid. 404(b) that Hill had been in possession of cocaine base on two prior occasions; and (3) by denying Hill's motion to suppress evidence obtained during the traffic stop that forms the basis of this case. We exercise jurisdiction under 28 U.S.C. § 1291 and, for the reasons set forth below, AFFIRM Hill's convictions on both counts.

## BACKGROUND

On March 24, 1993, Officer Shawn Noblitt of the Wichita Police Department was on patrol with a civilian observer, Sherri Harris. After witnessing a car turn left without using a turn signal, Officer Noblitt turned on his lights and siren to stop the car and cite the driver for a traffic violation. The car continued for approximately two and a half blocks, slowly drifting between the lane and the curb before pulling to the side of the road. There were three individuals in the car's front seat: the driver, James Gassaway; the middle passenger, Marquiz Alford; and the defendant Hill, on the passenger's side.

When the vehicle finally stopped, Noblitt parked his patrol car behind it. Harris remained in Noblitt's patrol car while Noblitt exited to speak to the passengers in the stopped vehicle. While approaching the parked car from behind, Officer Noblitt noticed that neither the driver nor Hill were wearing their shoulder safety belts, which is also a traffic infraction. Noblitt also noticed Alford and Hill talking, and watched Hill reach toward the passenger side window. This activity, along with the car's failure immediately to pull over, concerned Noblitt and prompted him to instruct all three passengers to keep their hands on the dashboard where he could see them. Although

Noblitt repeated this instruction several times, Hill failed to comply.

After speaking with the driver, who was unable to produce a driver's license, Officer Noblitt walked around the vehicle to the passenger side in order to cite Hill for failing to wear a safety belt. Hill told Noblitt his name, although Hill carried no identification, and Noblitt believed he recognized the name from the police "Interwatch Bulletin," which alerts officers to individuals with outstanding warrants. He also thought he recognized Hill from a previous domestic disturbance call. Based on these beliefs, Hill's refusal to remain still or keep his hands in Noblitt's view as directed, and a need to separate Hill from the car's other occupants for safety purposes, Officer Noblitt ordered Hill out of the car in order to issue the safety belt citation.

As Hill was exiting the car, he told Officer Noblitt that he had a gun hidden at his waistline. Noblitt called for backup assistance, confiscated the weapon, and placed Hill in handcuffs. While trying to confiscate the gun, Officer Noblitt noticed that Hill had his right hand "cupped" away from Noblitt's view.

At that point, Officer Noblitt noticed for the first time a plastic bag containing a white substance, later determined to be cocaine base, lying at Hill's feet. As Noblitt was moving Hill to his patrol car, Noblitt found a second bag that also contained cocaine base about three feet behind the vehicle on the passenger's side. Noblitt's passenger, Harris, testified that from her vantage point in Noblitt's patrol car, about eight feet behind the stopped vehicle, she had seen Hill throw that second bag out the passenger window while Noblitt was initially speaking to the vehicle's driver.

Hill was subsequently indicted and tried for possessing cocaine base and for possessing a firearm in relation to a drug trafficking offense. Because the original jury was unable to reach a verdict, Hill's first prosecution ended in a mistrial. At retrial, a second jury convicted Hill of both counts. Hill appeals those convictions here.

## ANALYSIS

Hill argues that his convictions should be set aside because the district court improperly admitted three pieces of evidence: (1) witness testimony that Hill was a "dope dealer"; (2) officers' testimony that Hill had been arrested in possession of cocaine base on two prior occasions; and (3) evidence obtained after Officer Noblitt ordered Hill to step out of the car, including Hill's admission that he was carrying a firearm, the firearm itself, and the bag of cocaine base found at Hill's feet.[1] We address each piece of evidence in turn.

### I.

### *Admitting Witness Testimony That Hill Is A "Dope Dealer."*

Hill first challenges the district court's admission of testimony by witness Marquiz Alford, the passenger who was seated between Hill and the driver. Alford testified that he had known Hill for about four years, that Hill had a lot of money, and that he believed Hill obtained that money working as "a dope dealer." Hill argues on appeal that Alford's characterization of Hill as "a dope dealer" was improperly admitted under Fed.R.Evid. 404(b).

Because Hill failed contemporaneously to object to this testimony at trial, however, he has not properly preserved this argument for review.[2] *See* Fed.R.Evid. 103(a); *United States v. Deluzio,* 454 F.2d 711, 713 (10th Cir.), *cert. denied,* 407 U.S. 922, 92 S.Ct. 2467, 32 L.Ed.2d 808 (1972). It appears that Hill did object to this testimony for "lack of foundation" in a motion for acquittal or new trial after his conviction. That objection, however, does not make up for the failure to object when the evidence was proffered at trial. *See Joseph v. Terminix Int'l Co.,* 17 F.3d 1282, 1286 (10th Cir.1994). Absent such a contemporaneous objection at

trial, we review the admission of Alford's statement only for "plain error." *Deluzio,* 454 F.2d at 713. We reverse only if admitting the statement placed the underlying fairness of the entire trial in doubt, *Joseph,* 17 F.3d at 1286, or if it affected one of the defendant's substantial rights, *see* Fed. R.Evid. 103(a) & (d). We conclude that the admission of Alford's statement did not constitute an error of such magnitude.

The statement was an isolated remark in the context of an entire trial. *See Deluzio,* 454 F.2d at 713 (holding that improper evidence of nonrelated crimes was "not so inflammatory or frequent so as to constitute plain error"). Hill cross-examined and re-cross-examined Alford at trial. And the judge provided the jury with written instructions not to consider evidence "related to possible unlawful acts by the defendant other than the specific offenses charged ... as proof that the defendant is guilty of the offense charged." Accordingly, we find that admitting Alford's statement does not constitute reversible "plain error."

### II.

### *Admitting Prior Acts Evidence Under Fed.R.Evid. 404(b).*

Hill also argues that the district court erred in admitting police officers' testimony that Hill had possessed cocaine base during two prior arrests for which Hill was never formally charged. The first prior possession was described by Officer Noland Keahey, who testified that on December 13th, 1992, he had found Hill asleep in a vehicle parked on the side of the interstate. Keahey explained that a computer check had shown that Hill's driver's license had been suspended and that there was an outstanding warrant for Hill's arrest. While executing the arrest, Keahey had discovered a clear plastic

---

1. The district court properly ruled under Fed. R.Crim.Proc. 12(f) that Hill had waived any challenge to the admissibility of the second bag of cocaine base, found several feet behind the vehicle, by failing to raise that challenge with his other objections at the suppression hearing. Hill may not reassert that issue here.

2. We note that Hill did object to this testimony as hearsay and for lack of foundation during his first trial, which ended without conviction. However, Hill failed to object to the same testimony at the second trial before the new jury that rendered the convictions Hill challenges in this appeal.

bag containing cocaine base on the vehicle's seat about 12 inches from Hill's side.

The second prior possession was described by Detective James Whittredge, a Wichita police officer assigned to narcotics investigations, who testified that on January 5, 1992, he had found Hill in a motel room, to which Whittredge had been voluntarily admitted by the woman to whom the room was registered. Whittredge testified, without explanation, that Hill had consented to a pat-down search for weapons. During the pat-down, Hill had attempted to keep the left pocket of his coat away from Officer Whittredge's reach. Whittredge then searched the coat pocket and found three clear plastic bags containing cocaine and cocaine base.

Over Hill's objections before and during trial, the district court admitted these officers' testimony under Fed.R.Evid. 404(b) to show Hill's "knowledge" or "intent" with respect to the current cocaine base possession charge. Hill argues, first, that the court misapplied Rules 404(b) and 403, because these prior possessions were either irrelevant to show knowledge or intent, or their prejudicial impact substantially outweighed their probative force. Second, Hill argues that even if relevant and probative, evidence of these past possessions should have been suppressed as products of unconstitutional searches and seizures. Hill properly preserved these arguments for appeal, and we review them in turn.

### A. Application of Fed.R.Evid. 404(b) and 403.

The admission of evidence under Fed. R.Evid. 404(b) is subject to review under an abuse of discretion standard. *United States v. Rackstraw*, 7 F.3d 1476, 1478 (10th Cir. 1993). Under Fed.R.Evid. 404(b), courts may not admit evidence of "other crimes, wrongs or acts . . . to prove the character of a person in order to show action in conformity therewith." However, such evidence is admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* at 1478 n. 1. In this case, the district court concluded that Hill's prior cocaine base possessions were admissi-

ble to show Hill's "knowledge" or "intent." "[I]t tends to show that the defendant knew what crack was and what it looked like," the court reasoned, and "to show that the defendant knew that the substance allegedly in his possession on March 24th, 1993, was crack."

To determine if this admission under 404(b) was proper, we apply a four-part test, which requires that: (1) the evidence was offered for a proper purpose; (2) the evidence was relevant; (3) the trial court determined under Fed.R.Evid. 403 that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave the jury proper limiting instructions upon request. *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *Rackstraw*, 7 F.3d at 1479. Because all four criteria have been met, we conclude that admitting the officers' testimony was not an abuse of the trial court's discretion.

The government offered this testimony for a proper and relevant purpose listed in 404(b)—namely, Hill's "knowledge"—which is clearly relevant, as it is an essential element of the charged offense. By standing on his not guilty plea, Hill "put[ ] in issue every material ingredient of the crime charged," leaving the government its full burden of proving every element beyond a reasonable doubt. In count one, Hill was charged with "unlawfully, knowingly, and intentionally" possessing cocaine base. The elements of this offense include not only that Hill "knowingly and intentionally possessed" the substance, but also that he "*knew* that the substance was cocaine base" at the time it was in his possession. Vol. VII at 202, Vol. I, Doc. 49, jury instr. 15, 19 (emphasis added). As the district court explained, evidence that Hill had been arrested in possession of cocaine base in clear plastic bags on two prior occasions is indeed probative that he knew what the two clear plastic bags at issue here contained.

The district court also properly determined that the probative force of these prior possessions was not substantially outweighed by the risk of unfair prejudice. To dispel poten-

tial prejudice, the judge cautioned the jury about the very limited purpose for which the prior possessions were admitted every time they were mentioned at trial, and again in a final written instruction. Thus, we reject Hill's contention that the officers' testimony should have been excluded under Fed. R.Evid. 403.

Because the district court followed and properly applied the four-part test for admitting evidence under Fed.R.Evid. 404(b), we conclude that its application of that rule to the testimony in question was not an abuse of discretion. This conclusion, however, does not halt our inquiry. For Hill raises an alternative and more substantial argument for why evidence of the prior possessions should nevertheless have been excluded from trial. Hill argues that because this evidence was obtained through unlawful searches and seizures, it should have been excluded under the Fourth Amendment to the United States Constitution.

### B. *Applying the exclusionary rule to evidence offered under Fed.R.Evid. 404(b).*

The district court did not fully address whether the evidence of Hill's two prior possessions was obtained in violation of the Fourth Amendment, because it held that the exclusionary rule simply does not apply to evidence admitted under Rule 404(b). R.O.A. Vol. I, Doc. 51 at 4 n. 2. The court began with the basic proposition that "[t]he rationale behind the exclusionary rule is the deterrence of illegal police conduct." *Id.* "That rationale," the court believed, "would be furthered only minimally, if at all, by prohibiting the prosecution from using unlawfully obtained evidence of the prior acts to show a defendant's state of mind in a subsequent distinct prosecution." *Id.* Thus, the district court held that the exclusionary rule would only bar evidence of Hill's two prior possessions in direct prosecutions for the prior possessions themselves. We disagree.

 We hold, to the contrary, that the exclusionary rule does apply where, as here, the alleged unlawfully obtained evidence is being used to prove an essential element of a charged offense—at least where there is some nexus between the initial search and seizure and the subsequent charged offense. This holding is consistent not only with the Supreme Court's general philosophy that the exclusionary rule ensures that individuals not be "convicted on unconstitutional evidence," *Mapp v. Ohio,* 367 U.S. 643, 657, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961), but also with its more specific emphasis on the rule's deterrence rationale. By testifying to the prior possessions at trial, the police who conducted the prior alleged unlawful searches and seizures actively participated in using that evidence under Fed.R.Evid. 404(b) to obtain a conviction. The Fourth Amendment to the United States Constitution guarantees the right of all citizens "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Recognizing that to pay lipservice to this right but to reject an accompanying remedy at trial would be "to grant the right but in reality to withhold its privilege and enjoyment," the Supreme Court held that evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Mapp,* 367 U.S. at 656, 81 S.Ct. at 1692; *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914).

Since the Court's initial recognition of the exclusionary rule in *Mapp* and *Weeks,* its more recent opinions have emphasized that the rule's "prime purpose" is to effectuate the Fourth Amendment's guarantee by deterring unlawful police conduct in the future. *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974); *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960); *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3411–12, 82 L.Ed.2d 677 (1984). This deterrence rationale has guided the Court in its attempt to answer questions about the exclusionary rule's scope. "As with any remedial device," the Court explains, "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Calandra,* 414 U.S. at 348, 94 S.Ct. at 620.

The government points to the set of "exclusionary rule exceptions" that this "prime purpose" has led the Supreme Court to recognize since the rule's inception, and argues that 404(b) evidence should be added to this growing list. In particular, the government points out that the exclusionary rule has been held not to bar the use of illegally obtained evidence before grand juries, *Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561; for impeachment purposes, *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); when a defendant attempts to assert the Fourth Amendment rights of another, *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978);[3] and as grounds for a writ of habeas corpus in collateral review, *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The government views these cases as demonstrating that evidence obtained in violation of the Fourth Amendment should only be excluded in direct criminal trials for the conduct that was the subject of the illegal search itself. It is only under such narrow conditions, the government contends, that the exclusionary rule will meaningfully advance its deterrence objective.

This conclusion, however, ignores the fact that throughout this step-by-step process of enunciating the bounds of the exclusionary rule, the Court has never swayed from the basic proposition that convictions may not be obtained with evidence from illegal searches and seizures. "[T]he need for deterrence and hence the rationale for excluding the evidence are strongest," the Court has consistently asserted, "where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." *Calandra*, 414 U.S. at 348, 94 S.Ct. at 620. When police testify in court about illegally obtained evidence pursuant to Fed. R.Evid. 404(b) in order to prove an essential element of the crime, such as knowledge or intent, the evidence is being used as direct evidence to obtain a conviction, and is thus an example of when the rationale for exclusion is, in the Court's view, "strongest." In contrast, the list of exclusionary rule "exceptions" that the government tries unsuccessfully to analogize to Rule 404(b) evidence, all involve contexts in which the evidence is *not* being affirmatively used to prove an element of an offense and thereby to obtain a conviction.

In *Calandra*, for example, the Supreme Court held that the exclusionary rule does not apply at grand jury hearings, so a witness may be compelled to testify about evidence officers found in that witness's possession during an unlawful search. 414 U.S. at 347–52, 94 S.Ct. at 619–22. The Court explained that the exclusionary rule did not apply because "[a] grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated." *Id.* at 343, 94 S.Ct. at 618. Thus, rather than compelling us to add 404(b) evidence to the list of exclusionary rule exceptions, this holding actually emphasizes that the heart of the rule is the need to assure that unlawful evidence is not used to obtain a conviction of the party whose Fourth Amendment rights were infringed. When such evidence is used under 404(b) to show an essential element of the prosecuted offense, such as intent or knowledge, that evidence *is* being used precisely as the *Calandra* Court said it should not: to adjudicate innocence or guilt.

The *Calandra* Court also noted the diminished remedial justification for the exclusionary rule in the grand jury context, because any incentive to disregard the Fourth Amendment solely to obtain a grand jury indictment would be "negated by the inadmissibility of the illegally seized evidence in a subsequent criminal prosecution." *Calandra*, 414 U.S. at 351, 94 S.Ct. at 621. By keeping the door closed to the use of the evidence at trial, the Court believed that opening the window at the preceding grand jury phase would only marginally decrease the deterrent effect of barring the evidence

---

**3.** Placing the *Rakas* example on the list of exclusionary rule "exceptions" blurs the fact that whether or not the exclusionary rule applies to a particular use of evidence is a distinct issue from whether a particular defendant has standing to assert the rule. *Rakas* thus does not advance the government's ultimate position because Hill clearly has standing to raise the Fourth Amendment challenge here, as he is the victim of the allegedly unlawful searches and seizures in question. *See Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425–26.

at trial. In contrast, refusing to apply the exclusionary rule to 404(b) evidence at trial would not be offset by any subsequent analogous "negating" force. In fact, quite to the contrary, it would simply open alternative doors to "subsequent criminal prosecutions" in which the illegally obtained evidence could still be used to prove elements of an offense. Thus, the government's reliance on *Calandra* is misplaced.

For similar reasons, the Supreme Court has also held that the exclusionary rule does not bar the use of illegally obtained evidence for impeachment purposes. *Walder,* 347 U.S. at 65, 74 S.Ct. at 356. The Court explained that the unlawfully obtained evidence was not being used "to determine whether the defendant had committed the crimes here charged," but solely to question the defendant's credibility. *Id.* at 64, 74 S.Ct. at 355. "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained," the Court explained, but "quite another to say that the defendant can ... provide himself with a shield against contradiction of untruths." *Id.* at 65, 74 S.Ct. at 356. Once again, rather than buttressing the government's position that the exclusionary rule should not apply to 404(b) evidence, this case actually reinforces the view that the exclusionary rule prevents "affirmative use[s]" of unlawfully obtained evidence to prove a defendant's guilt—precisely the effect that the officers' testimony had in this case.

The government, however, characterizes the "effect" of its use of 404(b) evidence as far more indirect, citing *Stone,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, to support its contention that prohibition of this use does not advance the exclusionary rule's deterrence rationale. In *Stone,* the Court held that a state prisoner may not rely on the exclusionary rule to obtain federal habeas corpus relief when the question of whether the evidence was obtained in violation of the Fourth Amendment has already been fully and fairly litigated in the state courts. 428 U.S. at 494, 96 S.Ct. at 3052. The Court reasoned that the contribution to deterrence of applying the exclusionary rule on habeas would be "minimal," because it was unlikely

"that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant." *Id.* at 493, 495, 96 S.Ct. at 3052, 3053. In contrast, by preventing officers from actively using illegally seized evidence to obtain convictions in direct, albeit subsequent, criminal prosecutions by applying the exclusionary rule to Fed.R.Evid. 404(b), the disincentive for violating the Fourth Amendment *is* enhanced. At the time a search and seizure occurs, the officers often will not know precisely how the subsequent government prosecutors will decide to use the evidence nor will they know precisely what criminal charges ultimately will be brought. However, it is well known that drug investigations, in particular, can go on for a long time and involve many different transactions and even many police encounters before a subsequent drug charge is brought, and the prosecutors may find it useful to present a complete drug history to the jury relying on one or another of the rationales allowed in 404(b). Here, unlike in *Stone v. Powell,* if the federal court does not enforce the exclusionary rule to deter Fourth Amendment violations, there is no other court that can fulfill that essential role.

■ Despite our holding that the exclusionary rule applies to evidence offered under Rule 404(b), we readily acknowledge that the Fourth Amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone,* 428 U.S. at 486, 96 S.Ct. at 3049. Where "the connection between police misconduct and evidence of a crime [is] sufficiently attenuated," we agree that exclusion neither protects the constitutional principles the rule was designed to protect, nor advances deterrence enough to justify its costs. However, that level of attenuation only occurs when the use of illegally seized evidence falls, in the words of the Supreme Court, "outside the offending officer's zone of primary interest." *United States v. Janis,* 428 U.S. 433, 458, 96 S.Ct.

3021, 3034, 49 L.Ed.2d 1046 (1976) (limiting exclusionary rule's effect in subsequent civil proceedings by a separate sovereign). Here, however, the very officers who conducted the earlier criminal investigation, including a drug investigation, of this defendant were called upon to testify about that drug involvement in order to obtain a drug conviction against the same defendant for conduct that occurred within just a few months of their initial investigations. All of this is a close enough nexus to convince us that the ultimate use of this evidence fell within the officers' zone of primary interest at the time these searches and seizures occurred.

Many courts, including the Tenth Circuit, have implicitly embraced this holding by evaluating the Fourth Amendment exclusionary rule challenges to Rule 404(b) evidence. In these cases, the courts conducted the same type of two-step inquiry in determining whether evidence should be admitted under 404(b) that the defendant urges in this case: admitting the evidence only if it *both* meets the technical requirements of Rule 404(b) *and* was not obtained in violation of the defendant's Fourth Amendment rights.[4] These cases lend direct support to our conclusion that the district court should have ruled on Hill's Fourth Amendment claim before admitting evidence of his two prior cocaine base possessions under Rule 404(b).

The Ninth Circuit case of *United States v. Lopez–Martinez,* 725 F.2d 471, 475–76 (9th Cir.), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984), is not to the contrary. In *Lopez–Martinez,* the defendant argued that evidence of a marijuana possession from eight years earlier should not be admitted under Fed.R.Evid. 404(b) to help prove a heroin possession charge because it was allegedly obtained in violation of the Fourth Amendment. *Id.* at 476. The Ninth Circuit took a case-by-case approach and held that the nexus between the arrest eight years earlier for marijuana possession and the subsequent trial for heroin possession was too attenuated to serve any deterrent effort by invoking the exclusionary rule.

We also note that, although the evidence was introduced there to show knowledge of the difference between heroin and marijuana, the court held that it did not go to an element of the crime charged because the defendant was charged only with possession of a "controlled substance," which included both heroin and marijuana. The defendant's testimony that he thought he was only in possession of marijuana rather than heroin was sufficient to establish the element of intent without regard to whether he knew the difference between heroin and marijuana.[5]

■ Because the district court erred in admitting evidence of Hill's two prior posses-

---

**4.** *United States v. Cotton,* 751 F.2d 1146 (10th Cir.1985). *See also, United States v. Hill,* 898 F.2d 72, 74 (7th Cir.1990) (holding that district court "should have made an independent finding concerning the constitutionality of the seizure of the evidence before admitting it [under 404(b)]"); *United States v. Lego,* 855 F.2d 542, 544–46 (8th Cir.1988) (addressing merits of defendant's challenge to admissibility of a prior firearm possession *both* on grounds that it violated Rule 404(b)'s requirements and that it was obtained in violation of Fourth Amendment); *United States v. Renteria,* 625 F.2d 1279, 1281–82 (5th Cir.1980) (holding evidence of a prior offense admissible under the requirements of 404(b) "[u]nless barred by the Fourth Amendment," and remanding for district court to rule on defendant's Fourth Amendment claim); *United States v. Patterson,* 691 F.Supp. 908, 911–14 (D.Md.1987) (addressing the merits of defendant's challenge that prior act evidence was inadmissible on both Fourth Amendment and technical 404(b) grounds); *United States v. Guevera,* 589 F.Supp. 760, 763 (E.D.N.Y.1984) (holding, in

pretrial motion to suppress, that evidence of a cocaine possession was not obtained in violation of Fourth Amendment, but preserving defendant's right to later challenge its admission under Rule 404(b)); *United States v. Perez,* 562 F.Supp. 574, 575–79 (D.N.J.1982) (excluding evidence of prior cocaine possession on Fourth Amendment grounds, thereby mooting defendant's alternative challenge that it violated 404(b) requirements).

**5.** Similarly, in *United States v. Nolan,* 551 F.2d 266 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977), we declined to consider the exclusionary rule with regard to 404(b) evidence where it was not being used to prove an element of the crime charged. Further, there the 404(b) evidence had been gathered by a British Customs agent in London, and, although not discussed by the court, it seems self-evident that applying United States exclusionary rules is unlikely to have any meaningful deterrent effect on unrelated conduct by foreign law enforcement officials in their own countries.

sions under Fed.R.Evid. 404(b) without first determining if such evidence was obtained in violation of the Fourth Amendment, we would normally remand for the district court to make such a determination. Here, however, remand is unnecessary because we conclude that, even if such evidence was obtained in violation of Hill's Fourth Amendment rights, admitting the evidence was "harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (holding that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt).

At trial, the government presented strong and uncontroverted evidence that Hill had possessed the two bags of cocaine base in question, knowing that they contained a controlled substance. It was undisputed that Officer Noblitt found two bags containing cocaine base on Hill's side of the vehicle shortly after removing Hill from the car, one directly at Hill's feet. Noblitt testified that he had previously seen Hill reach toward the car window; Harris testified that she had seen Hill throw a clear bag with a white substance out that window; and the vehicle's other two passengers testified that the bags did not belong to them. Noblitt also testified that, once Hill exited the car, he had one hand "cupped" away from his view. Furthermore, we have upheld Alford's testimony that Hill was a dope dealer. Finally, Noblitt confiscated a handgun concealed on Hill. Based on this consistent evidence from four eyewitnesses, along with Hill's suspicious behavior throughout the investigatory stop, and the physical locations of the cocaine, we find beyond a reasonable doubt that omitting evidence of Hill's two prior possessions would not have changed the jury's determination that Hill intended to possess the cocaine base at issue here. Nor would omitting that evidence have had an effect on the jury's determination that Hill knew the bags contained a controlled substance, given the clear and logical inference of knowledge that would still remain from Hill's furtive attempts to discard the bags, along with Alford's testimony that Hill dealt "dope." Because we conclude that admitting evidence of the prior posses-

sions constituted harmless error beyond a reasonable doubt, there is no need to remand the case for the court to rule on the Fourth Amendment claims that it should have addressed below. We therefore decline to reverse Hill's convictions based on his 404(b) claims.

## IV.

### Motion to Suppress.

Hill's final argument for reversing his convictions is that the district court improperly denied his motion to suppress evidence obtained after Officer Noblitt ordered Hill out of the car. Hill does not challenge that Noblitt had cause to stop the vehicle for a traffic infraction, and he admits that Noblitt was justified in citing him for failing to wear a safety belt. He also concedes that *if* Noblitt had authority to order him from the vehicle, then Noblitt had reasonable suspicion to frisk him after he admitted to possessing a firearm and had probable cause to arrest him after that frisk uncovered his weapon. Hill's single, narrow contention is that Officer Noblitt lacked authority under the Fourth Amendment to order him, as a passenger in a routine traffic stop, to step out of the vehicle to obtain information necessary to issue a seatbelt citation. Thus, Hill argues that because Noblitt would not have obtained Hill's admission, the firearm, or the bag of cocaine base at Hill's feet without having removed Hill from the car, that evidence should have been suppressed.

■■■■■ In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous, viewing the evidence in the light most favorable to the government. *United States v. Anderson*, 981 F.2d 1560, 1566 (10th Cir. 1992). The ultimate determination of reasonableness under the Fourth Amendment is a question of law subject to de novo review. *Id.*

In *Pennsylvania v. Mimms*, the Supreme Court held that when an officer lawfully stops a vehicle for a traffic violation, the officer may order the driver out of the vehicle without violating the Fourth Amendment.

434 U.S. 106, 109–11, 98 S.Ct. 330, 332–33, 54 L.Ed.2d 331 (1977) (per curiam). Because the traffic violation already allows the driver to be lawfully detained, the Court considered only the incremental burden on the driver's liberty by being asked to exit the car and found that incremental intrusion to be only "*de minimis*." *Id.* at 111, 98 S.Ct. at 333. "Establishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make unobserved movements," the Court explained, which, "in turn, reduces the likelihood that the officer will be the victim of an assault." *Mimms,* 434 U.S. at 110, 98 S.Ct. at 333. "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.* at 111, 98 S.Ct. at 333.

Hill argues that the *Mimms* holding technically applies only to vehicle *drivers,* at least where the passenger is not a criminal suspect. *See* 2 W. Lafave, Search and Seizure § 5.2(h) at 469 (2d ed. 1987) ("The courts are not in agreement as to whether the *Mimms* reasoning also applies to a passenger in a stopped vehicle."). Because traffic stops are analogous to *Terry* stops, *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317 (1984), Hill contends that an officer must articulate a reasonable safety concern under prevailing *Terry* stop standards to lawfully order a *passenger* out of a vehicle as well. It is not apparent to us why a passenger should be treated differently from the driver of the vehicle for this analysis because the risk to the officer and the intrusion upon the privacy of the suspect will be similar whether the suspect is a driver or a passenger. Thus, we apply *Pennsylvania v. Mimms* to the situation where the passenger is a suspect. *See Michigan v. Long,* 463 U.S. 1032, 1047–48, 103 S.Ct. 3469, 3479–80, 77 L.Ed.2d 1201 (1983) (noting that "[i]n *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), we held that police may order *persons* out of an automobile during a stop for a traffic violation") (emphasis added); *United States v. Merritt,* 695 F.2d 1263, 1273 (10th Cir.1982) (citing *Mimms* for the proposition that "the police may, in connection with an investigatory stop, order *an individual* out of his vehicle") (emphasis added), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983).

In *Mimms,* the Court began with the uncontroverted proposition that a driver may be lawfully detained for violating a traffic law in order to investigate and issue a citation. The Court then upheld the officer's right to order the driver out of the vehicle, primarily because the order imposed such a "*de minimis*" incremental liberty burden on someone who could already be lawfully detained. Thus, when a passenger has committed a traffic infraction as well—in this case, by failing to wear a safety belt—the incremental burden imposed by requiring the passenger to exit the vehicle to investigate and issue the citation is similarly "*de minimis*." Because *Mimms* would allow an officer to order a driver out of a vehicle after stopping the driver for failing to wear a seatbelt, it should logically apply to a passenger who has committed an identical violation.[6]

## CONCLUSION

For the reasons stated above, we reject the defendant's admissibility claims and AFFIRM his convictions on both counts.

TACHA, Circuit Judge, concurring.

I concur in the judgment of the court but write separately to express my skepticism at the majority's discussion of the exclusionary rule's applicability to the introduction of evidence under Fed.R.Evid. 404(b). I believe that the opinion adopts what amounts to a per se exclusion of illegally obtained evidence under Rule 404(b), and that such a rule is unwarranted.

The Supreme Court has stated repeatedly that the purpose of the exclusionary rule is to

---

**6.** In addition, the district court's findings provide an alternative justification for Noblitt to have ordered Hill from the vehicle without violating his Fourth Amendment rights. The court determined that Noblitt had articulated "legitimate concerns for his safety," providing reasonable suspicion to remove Hill from the car to conduct an investigatory *Terry* stop, regardless of Hill's passenger status. *United States v. Hill,* 822 F.Supp. 702, 704–05 (D.Kan.1993); *see United States v. King,* 990 F.2d 1552, 1558–61 (10th Cir.1993).

deter unlawful police conduct. *See, e.g., Arizona v. Evans,* —— U.S. ——, ——, 115 S.Ct. 1185, 1191, 131 L.Ed.2d 34 (1995); *New York v. Harris,* 495 U.S. 14, 20, 110 S.Ct. 1640, 1644, 109 L.Ed.2d 13 (1990); *Illinois v. Krull,* 480 U.S. 340, 347, 107 S.Ct. 1160, 1165, 94 L.Ed.2d 364 (1987); *Stone v. Powell,* 428 U.S. 465, 485–88, 96 S.Ct. 3037, 3048–49, 49 L.Ed.2d 1067 (1976). Because deterrence is the central purpose of the exclusionary rule, when "the exclusionary rule does not result in appreciable deterrence, then, clearly, its use ... is unwarranted." *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046 (1976). But "it does not follow from the emphasis on the exclusionary rule's deterrent value that anything which deters illegal searches is thereby commanded by the Fourth Amendment." *United States v. Leon,* 468 U.S. 897, 910, 104 S.Ct. 3405, 3413, 82 L.Ed.2d 677 (1984) (internal quotation omitted). Instead, "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974).

Using the amount of deterrence as a yardstick, the Supreme Court has determined that applying the exclusionary rule does not measure up in a number of situations. *See, e.g., Evans,* —— U.S. at ——, 115 S.Ct. at 1193 (applying good faith exception to evidence obtained pursuant to erroneous computer entry); *Harris,* 495 U.S. at 21, 110 S.Ct. at 1644 (holding that "the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of [*Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ]"); *Krull,* 480 U.S. at 360, 107 S.Ct. at 1172 (stating that good faith exception applied to evidence obtained under unconstitutional statute); *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420 (stating that, when officers rely in good faith on a warrant, the exclusionary rule does not apply); *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (declining to apply the exclusionary rule to prohibit the prosecution from introducing illegally obtained evidence if the evidence would have inevitably been discovered); *Stone,* 428 U.S. at 494–95, 96 S.Ct. at 3052–53 (refusing to apply the exclusionary rule in federal habeas cases to claimed violations of the Fourth Amendment); *Janis,* 428 U.S. at 459–60, 96 S.Ct. at 3034–35 (concluding that the "exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign"); *Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975) (holding that statements obtained in violation of Fifth Amendment can be used for impeachment purposes); *Calandra,* 414 U.S. at 351–52, 94 S.Ct. at 621–22 (refusing to extend the exclusionary rule to grand jury proceedings); *Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971) (allowing statements obtained in violation of the Fifth Amendment to be introduced as prior inconsistent statements); *Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954) (concluding that the exclusionary rule does not bar the use of illegally obtained evidence for impeachment purposes).

Turning to the issue at hand, this court has long recognized the importance of Rule 404(b) evidence, especially in the context of prosecutions involving illegal narcotics. *See, e.g., United States v. McKinnell,* 888 F.2d 669, 676 (10th Cir.1989); *United States v. Brown,* 770 F.2d 912, 914 (10th Cir.1985), *rev'd on other grounds sub nom. Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Consequently, the societal cost of excluding such evidence is high. *Cf. Colorado v. Connelly,* 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986) (recognizing that "the exclusionary rule imposes a substantial cost on the societal interest in law enforcement"); *Leon,* 468 U.S. at 907, 104 S.Ct. at 3412 ("The substantial costs exacted by the exclusionary rule ... have long been a source of concern."); *Stone,* 428 U.S. at 490, 96 S.Ct. at 3050 (noting that application of the exclusionary rule "deflects the truthfinding process and often frees the guilty").

The deterrent value of excluding Rule 404(b) evidence, on the other hand, is minimal. In its most common application, the

exclusionary rule deters a police officer from violating the Fourth Amendment because the government cannot use the evidence to prosecute the defendant for the crime proven by the unconstitutionally obtained evidence. This prohibition embodies the primary deterrent impact of the exclusionary rule. Here, however, the government introduced evidence from a prior search to show intent in defendant's current prosecution. Assuming *arguendo* that the evidence was seized unconstitutionally, it is unclear whether excluding the evidence would serve a significant deterrent interest and therefore whether this situation constitutes an "area[ ] where [the exclusionary rule's] remedial objectives are ... most efficaciously served." *Calandra*, 414 U.S. at 348, 94 S.Ct. at 620.

Of course, it is also an overstatement to say that the use of illegally obtained evidence for Rule 404(b) purposes should always be permitted. In some cases, the exclusionary rule may deter police conduct even when the evidence is not used in the direct criminal prosecution. For example, suppose that the police conducted an illegal search following a defendant's arrest but before trial, with the express purpose of uncovering "knowledge" evidence for trial. Such evidence may be admissible under Rule 404(b), but a court should nevertheless bar the evidence. Absent a sufficient nexus between the obtaining of the evidence and the subsequent prosecution, however, the exclusionary rule should not apply.[1]

In this case, the district court made no findings regarding whether the exclusionary rule had any applicability under these facts. Nevertheless, a remand for this determination is unnecessary because, as the majority concludes, any potential error is harmless. Accordingly, I concur in the judgment of the court.

---

**1.** The Ninth Circuit has adopted a similar approach. *See United States v. Lopez–Martinez*, 725 F.2d 471, 476 (9th Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984); *cf. United States v. Batts*, 558 F.2d 513, 516 (9th Cir.1977) (upholding the use of illegally obtained evidence to show knowledge and intent without discussing bad faith of the police officers), *cert. denied*, 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978).