[No. B132060. Second Dist., Div. Six. Feb. 7, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH WILLIAM BEUER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

COUNSEL

Law Offices of Andrade & DeNoce and Kevin G. DeNoce for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda Johnson, Steven D. Matthews, Scott A. Taryle and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Defendant is charged with drug offenses. Pursuant to Evidence Code section 1101, subdivision (b), the People move to introduce evidence of a prior uncharged drug arrest to show knowledge of drugs. Should evidence of the prior offense be suppressed under Penal Code section 1538.5?

No. Absent a connection between the instant offense and the prior arrest, defendant may not seek to suppress evidence of the prior offense.

### FACTS

On June 9, 1997, California Highway Patrol (CHP) officers stopped defendant Joseph William Beuer for speeding. Officer Johnson smelled a strong odor of methamphetamine coming from Beuer's car and found six small plastic baggies on the ground about 13 feet behind Beuer's car. The baggies smelled of methamphetamine and contained 124 grams of methamphetamine. On the ground next to the baggies was a piece of paper towel with tear marks matching a piece of paper towel inside the car. The officers arrested Beuer for violating Health and Safety Code section 11379.

### The Prior Arrest

On December 31, 1996, Oxnard police officers responded to a call regarding an occupied car that had been parked for over three and one-half hours. Beuer was sleeping in the driver's seat of the car. One of the officers noticed what appeared to be a marijuana cigarette lying on the floorboard next to Beuer's feet.

Beuer stated he did not have his driver's license with him. Dispatch mistakenly informed the officers that Beuer was on probation with search

terms. In their patdown search of Beuer, the officers found a pager in one pocket and nearly $400 cash in another.

The officers searched the car and found a carrying case containing an automatic handgun, several clear baggies presumptively containing methamphetamine and a baggie containing marijuana. In the trunk they found a list of government radio scanner frequencies, and men's clothing.

The officers arrested Beuer for carrying a weapon and for various drug charges, among other things, but no charges were filed.

### Motions

Pursuant to Evidence Code section 1101, subdivision (b),[1] the People moved to introduce evidence of the uncharged offense to show Beuer's knowledge about drugs and his intent to sell them. Beuer moved to suppress the evidence under Penal Code section 1538.5. Beuer also objected to use of the evidence under Evidence Code sections 352, 402 and 403. The parties stipulated that the court may consider the facts set forth in the proffered police reports in ruling on the motions.

The court denied the motion to suppress, overruled Beuer's Evidence Code objections and found the evidence obtained from the 1996 incident admissible pursuant to Evidence Code section 1101, subdivision (b). The court explained that excluding the evidence from that search would not deter improper police conduct because there was no connection between the 1996 incident and the instant offense. After the trial court ruled on the motions, Beuer pled guilty to one count of transportation of methamphetamine. (Health & Saf. Code, § 11379; Pen. Code, § 1538.5.) We affirm.

### DISCUSSION

### Motion to Dismiss

■ The People contend Beuer's appeal should be dismissed because he failed to comply with Penal Code section 1237.5 and secure a certificate of probable cause. We disagree.

A certificate of probable cause is not required where the defendant raises issues on appeal regarding the validity of a search or seizure "for which an

---

[1]Evidence Code section 1101, subdivision (b), reads, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

appeal is provided under [Penal Code] section 1538.5, subdivision (m)." (*People v. Jones* (1995) 10 Cal.4th 1102, 1106 [43 Cal.Rptr.2d 464, 898 P.2d 910]; *People v. Mendez* (1999) 19 Cal.4th 1084, 1096 [81 Cal.Rptr.2d 301, 969 P.2d 146]; *People v. Kaanehe* (1977) 19 Cal.3d 1, 8 [136 Cal.Rptr. 409, 559 P.2d 1028]; Cal. Rules of Court, rule 31(d).) Penal Code section 1538.5, subdivision (m), provides, in pertinent part, "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty. Review on appeal may be obtained by the defendant provided that . . . prior to conviction he or she has moved for the . . . suppression of the evidence." (*Jones, supra,* at p. 1106; accord, *People v. Lloyd* (1998) 17 Cal.4th 658, 663-664 [72 Cal.Rptr.2d 224, 951 P.2d 1191].)

*Does the exclusionary rule preclude use of evidence of prior, uncharged acts to show knowledge and intent under Evidence Code section 1101, subdivision (b)?*

██ Beuer argues that the People may not use evidence illegally obtained from the 1996 arrest to establish his knowledge of narcotics and his intent to transport drugs for sale in the instant case. The People assert that the exclusionary rule does not apply here because the nexus between the 1996 search and the instant one is so attenuated that exclusion would not deter police misconduct.

██ The exclusionary rule serves to deter police from violating the Fourth Amendment to the United States Constitution. (*Arizona v. Evans* (1995) 514 U.S. 1, 10-11 [115 S.Ct. 1185, 1190-1191, 131 L.Ed.2d 34, 44]; *New York v. Harris* (1990) 495 U.S. 14, 20-21 [110 S.Ct. 1640, 1644-1645, 109 L.Ed.2d 13, 22]; and see *United States v. Janis* (1976) 428 U.S. 433, 458, fn. 35 [96 S.Ct. 3021, 3034, 49 L.Ed.2d 1046, 1063].)

In a trio of opinions, the Ninth Circuit has stated that "[i]f application of the [exclusionary] rule in a particular situation 'does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted.' " (*United States v. Lopez-Martinez* (9th Cir. 1984) 725 F.2d 471, 476, quoting *United States v. Janis, supra,* 428 U.S. at p. 454 [96 S.Ct. at p. 3032, 49 L.Ed.2d at p. 1060]; accord, *U.S. v. Medina* (9th Cir. 1999) 181 F.3d 1078, 1082; *U.S. v. Basinger* (9th Cir. 1995) 60 F.3d 1400, 1407.)

In *Lopez-Martinez,* border patrol agents arrested the defendant in 1982 for importing and possessing heroin with intent to distribute it. At trial, the prosecution introduced evidence that in 1974 Drug Enforcement Administration (DEA) officials had stopped and confiscated two vehicles containing

680 pounds of marijuana. The defendant had told a DEA agent that he was to receive $1,000 for transporting the drugs. The government offered the evidence under Federal Rules of Evidence, rule 404(b) (28 U.S.C.) to show the defendant's knowledge and intent to import heroin. (*United States v. Lopez-Martinez, supra,* 725 F.2d at pp. 475-476.)

On appeal, the Ninth Circuit rejected the argument that evidence from the 1974 arrest should have been suppressed. There was no evidence that the enforcement activities in the 1974 and 1982 incidents were related. Because "the agents in 1974 did not have the later 1982 proceedings in their 'zone of primary interest,' " the deterrent effect of excluding evidence from the 1974 incident was "too small to outweigh the cost to society of the loss of relevant and probative evidence in the 1982 proceeding." (*United States v. Lopez-Martinez, supra,* 725 F.2d at p. 476.)

In *U.S. v. Basinger, supra,* 60 F.3d 1400, the defendant was convicted of knowingly maintaining a place to manufacture methamphetamine and making methamphetamine in Yakima, Washington in 1992. At trial, the prosecution introduced evidence that police had found one and one-fourth gram of methamphetamine, $10,440 cash and a 90-pound drum of red phosphorous in the trunk of the defendant's car in a search during a 1991 traffic stop and arrest of the defendant in California.

The Ninth Circuit rejected the claim that evidence from the 1991 search should have been suppressed. There was no evidence of bad faith or collusion between the California and Washington officers in the separate matters—the California officer did not have the Washington incident within his " ' "zone of primary interest." ' " (*U.S. v. Basinger, supra,* 60 F.3d at p. 1407, quoting *United States v. Lopez-Martinez, supra,* 725 F.2d at p. 476, and citing *United States v. Janis, supra,* 428 U.S. at p. 458 [96 S.Ct. at p. 3034, 49 L.Ed.2d at p. 1063].) Thus, even if the 1991 search were illegal, exclusion of the evidence from that arrest would be "unwarranted because exclusion would have a minimal deterrent effect." (*Basinger, supra,* at p. 1407.)

In *U.S. v. Medina, supra,* 181 F.3d 1078, the defendant was convicted in federal court for bank robberies occurring between September 1995 and May 1996. The court denied the defendant's motion to suppress a gun found in a luggage search by Los Angeles International Airport police and another gun found by Los Angeles Police Department officers pursuant to a traffic stop for expired registration tags. The gun possession charge arising from the traffic stop was dismissed after the state court suppressed the gun as the product of an illegal search. The federal investigators who arrested the defendant for the bank robberies obtained both guns from the Los Angeles Police Department.

On appeal from the conviction for the bank robberies, the Ninth Circuit rejected the defendant's argument that the admissibility of the guns depended on an assessment of the legality of the prior searches. (*U.S. v. Medina, supra,* 181 F.3d at p. 1081.) This was so even though the guns at issue were the same weapons used in the bank robberies. Again, the court held that "[a]bsent any threshold showing of a connection or 'nexus' in time, place, or purpose between the searches and the subsequent prosecution, there is no appreciable deterrent purpose in suppressing the evidence." (*Id.,* at p. 1082.) The prosecution made no showing of collusion by the distinct police agencies in conducting the various searches so as to obtain the federal bank robbery conviction.

 Here too, there is no showing of a connection or nexus between the prior and instant offenses. In 1996, Oxnard police officers responded to a call about a suspicious car. In 1997, the CHP stopped Beuer's car for speeding. The police agencies are separate and there is no showing that the CHP had any knowledge of the 1996 incident. The instant arrest was not within the zone of primary interest of the Oxnard police. Assuming that the 1996 search was improper, evidence from that search may be used here for purposes of Evidence Code section 1101, subdivision (b).

Beuer relies on *U.S. v. Hill* (10th Cir. 1995) 60 F.3d 672. In *Hill*, a Wichita police officer found a gun and several bags of cocaine in the defendant's car during a March 1993 traffic stop. The defendant was charged with federal narcotics and firearm offenses. At trial, the prosecution presented evidence pursuant to Federal Rules of Evidence, rule 404 (28 U.S.C.) that a Wichita officer found a bag of cocaine while searching defendant's car in December 1992.[2] The government also introduced evidence that a search of defendant by Wichita police in January 1993 revealed several bags of cocaine and cocaine base.

The Tenth Circuit held that "the exclusionary rule does apply where . . . the alleged unlawfully obtained evidence is being used to prove an essential element of a charged offense—at least where there is some nexus between the initial search and seizure and the subsequent charged offense. This holding is consistent not only with the Supreme Court's general philosophy that the exclusionary rule ensures that individuals not be 'convicted on unconstitutional evidence,' . . . but also with its more specific emphasis on the rule's deterrence rationale. By testifying to the prior possessions at trial,

---

[2]Like Evidence Code section 1101, subdivision (b), Federal Rules of Evidence, rule 404(b) (28 U.S.C) permits evidence of prior crimes, wrongs or acts, for certain purposes, including to provide motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

the police who conducted the prior alleged unlawful searches and seizures actively participated in using that evidence . . . to obtain a conviction." (*U.S. v. Hill, supra,* 60 F.3d at p. 677.)

*Hill* acknowledged that evidence of prior bad acts may be used to prove elements necessary to convict on current charges "[w]here 'the connection between police misconduct and evidence of a crime [is] sufficiently attenuated.' " (*U.S. v. Hill, supra,* 60 F.3d at p. 679, citing *United States v. Janis, supra,* 428 U.S. at p. 458 [96 S.Ct. at p. 3034, 49 L.Ed.2d at p. 1063].) "[T]hat level of attenuation only occurs when the use of the illegally seized evidence falls . . . 'outside the offending officer's zone of primary interest.' " (*Hill, supra,* 60 F.3d at p. 679.) There was a sufficient nexus in *Hill* because "the very officers who conducted the earlier criminal investigation . . . were called upon to testify about that drug involvement in order to obtain a drug conviction against the same defendant for conduct that occurred within just a few months of their initial investigations." (*Id.,* at p. 680.) The *Hill* court distinguished *Lopez-Martinez,* stating that more time had elapsed between the arrests there. (*Ibid.*)

As in *Lopez-Martinez,* the instant facts are distinguishable from those in *Hill.* Here the police agencies are separate, there is no showing of collusion between them, and there was more than five months between the instant incidents. The exclusionary rule serves a prophylactic purpose in preventing improper police conduct. (*Arizona v. Evans, supra,* 514 U.S. at p. 14 [115 S.Ct. at p. 1193, 131 L.Ed.2d at p. 46]; *New York v. Harris, supra,* 495 U.S. at p. 20 [110 S.Ct. at p. 1644, 109 L.Ed.2d at p. 22]; *United States v. Janis, supra,* 428 U.S. at p. 458, fn. 35 [96 S.Ct. at p. 3034, 49 L.Ed.2d at p. 1063].) But the exclusionary rule only applies when there is a threshold showing of a sufficiently close nexus between the incidents at issue. (*United States v. Lopez-Martinez, supra,* 725 F.2d at p. 476; *U.S. v. Medina, supra,* 181 F.3d at p. 1082; *U.S. v. Basinger, supra,* 60 F.3d at p. 1407.) That nexus does not exist here.

Beuer asserts that by refusing to suppress evidence of prior uncharged acts, courts compromise judicial integrity by approving untoward police conduct. We disagree. The rules explicated by the Ninth Circuit cases discussed above are designed to deter collusive police misconduct, but otherwise to permit the use of probative evidence. These rules do not encourage violations of the Fourth Amendment. In addition, before the prosecution may use such evidence, it must show it to be relevant, under Evidence Code section 1101, subdivision (b), to prove some fact other than predisposition to commit the crime at issue.

The trial court correctly denied Beuer's motion to suppress the evidence sought to be used under Evidence Code section 1101, subdivision (b).

[[*Penalty Assessment Fines*]]*

The judgment is affirmed.

Yegan, J., and Coffee, J., concurred.

On February 10, 2000, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 17, 2000.

---

*See footnote, *ante*, page 1433.